[No. E052377. Fourth Dist., Div. Two. May 30, 2012.]

CITY OF COLTON, Cross-complainant and Appellant, v.
GAYLOR W. SINGLETARY, Cross-defendant and Respondent.

## Counsel

Best Best & Krieger, John D. Higginbotham and Kira Klatchko for Cross-complainant and Appellant.

Law Offices of Courtney M. Coates and Courtney M. Coates for Cross-defendant and Respondent.

**OPINION**

**MILLER, J.**—The City of Colton (the City) filed a cross-complaint against Gaylor W. Singletary (Singletary) for (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) unfair business practices; (5) declaratory relief; and (6) injunctive relief. The cross-complaint concerned allegations that, in 1992, Singletary had agreed to construct infrastructure in the City as part of a subdivision plan. However, as the result of Singletary bribing a City council member, a second agreement was created in 1999, in which the City agreed to construct the infrastructure. Singletary sued to have the City construct the infrastructure per the 1999 agreement, and the City cross-complained for damages as a result of Singletary bribing the council member and not constructing the infrastructure per the 1992 agreement.

The trial court granted Singletary's anti-SLAPP motion as to the City's fourth cause of action (unfair business practices) and the sixth cause of action (injunctive relief), but denied the motion in all other respects. (Code Civ. Proc., § 425.16.)[1] The trial court awarded Singletary $5,750 for attorney's fees, and $80 for costs.

The City contends the trial court erred by granting the anti-SLAPP motion as to the fourth and sixth causes of action, and awarding attorney's fees and costs. The City raises six issues on appeal. First, the City asserts that the cross-complaint does not, or only incidentally, concern protected activity. Second, the City contends that the evidence reflects the City is likely to prevail on its cross-complaint. Third, the City asserts the cross-complaint is exempt from the anti-SLAPP statute because it falls within the public enforcement exception. (§ 425.16, subd. (d).) Fourth, the City contends the cross-complaint is exempt from the anti-SLAPP statute because it falls within the public interest exception. (§ 425.17, subd. (b).) Fifth, the City asserts this court can consider the propriety of the attorney fee award on appeal. Sixth, the City contends the trial court erred in awarding attorney's fees.

## FACTUAL AND PROCEDURAL HISTORY

### A. CROSS-COMPLAINT

The facts in this subsection are taken from the City's cross-complaint and exhibits attached to the cross-complaint.

Singletary owned several acres of mostly undeveloped land in the southern area of the City (the Property). In 1992, Singletary sought permission from

---

[1] All subsequent statutory references will be to the Code of Civil Procedure, unless otherwise indicated.

the City to subdivide and develop a portion of the Property. The subdivision and development plans triggered an obligation for Singletary to construct infrastructure to serve the Property, such as water systems, sewer systems, and paving streets. Singletary did not want to construct the infrastructure in 1992, so the City and Singletary entered into an agreement that allowed Singletary to subdivide and develop the Property, but defer construction of the infrastructure to a future date of the City's choosing. The foregoing agreement was recorded in a written contract dated October 29, 1992. In November 1992, the contract was recorded in San Bernardino County's official records, in conjunction with the recording of a parcel map by Singletary.

In November 1997, the city council member who represented the southern portion of the City was recalled, and James Grimsby (Grimsby) was elected to serve the remainder of the council member's term. After Grimsby's election, Singletary bribed Grimsby with cash in exchange for Grimsby's assistance in securing an agreement in which the City would construct the infrastructure. Singletary gave Grimsby approximately $4,986. In 1999, as a result of the bribery, the city council voted to direct staff to negotiate a " 'development plan' " with Singletary, otherwise referred to as the "Center Street extension project," and to enter into contractual agreements to construct various components of the infrastructure.

In March and April 2003, Singletary was charged with and pled guilty to bribing Grimsby to support the Center Street extension project. (18 U.S.C.S. § 666.) On January 10, 2008, Singletary sued the City, seeking to compel the City to construct the infrastructure at its own expense, per the 1999 agreement.

In 2009, the City discovered the 1992 contract, and in September 2009 the City sought to have Singletary construct the infrastructure, per the 1992 agreement. The City also sought to have Singletary reimburse it in the amount of $408,398.70, for the costs of construction that had already been completed by the City. In October 2009, Singletary rejected the City's demands. The City filed a cross-complaint against Singletary on June 30, 2010.

The City's fourth cause of action was for unfair business practices. (Bus. & Prof. Code, § 17200.) The City alleged: "Singletary has engaged and continues to engage in unlawful, unfair and fraudulent business acts and practices, as more fully set forth above, including but not limited to bribing Grimsby and now attempting to profit by that crime (despite having been caught and having pled guilty to a felony), in violation of various state and federal statutes, including without limitation, 18 U.S.C. § 666, California Government Code sections 1090 et seq., California Code of Civil Procedure section 128.7,

subdivisions (b) and (f), and California Civil Code section 3517 and 3521."[2] In the "General Allegations" portion of the cross-complaint, the City alleged, "Singletary filed a civil lawsuit against Colton which, in substance, seeks to compel Colton to construct the Infrastructure at its own expense." The fourth cause of action sought (1) an injunction requiring Singletary to construct the remaining infrastructure; (2) restitution for the portions of the infrastructure already completed by the City; and (3) an injunction requiring Singletary to "cease and desist from seeking to profit by his own admitted bribery of Grimsby."

The City's sixth cause of action sought injunctive relief. The sixth cause of action realleged and incorporated by reference all of the general allegations, as well as the allegations in the fourth cause of action. The sixth cause of action sought (1) an injunction requiring Singletary to construct the remaining infrastructure; (2) restitution for the portions of the infrastructure already completed by the City; and (3) an injunction requiring Singletary to "cease and desist from seeking to profit by Singletary's bribery of Grimsby."

## B. *ANTI-SLAPP MOTION*

On July 21, 2010, Singletary filed an anti-SLAPP motion in response to the cross-complaint. Singletary asserted that the City's cross-complaint was based upon Singletary " 'now attempting to profit' " from his crime, which meant the City's claims were directed at Singletary's lawsuit against the City. Singletary argued that he had a constitutional right to file a lawsuit, and that "a criminal defendant who enters a non-litigated guilty plea has the right to litigate his factual guilt, for the first time, in a subsequent civil lawsuit." In other words, the guilty plea did not serve as collateral estoppel on the issue of the 1999 agreement being void as a result of the bribery.

Specific to the fourth cause of action for unfair business practices, Singletary argued that the cause of action was based upon his bribes and his current lawsuit, and that Singletary had a right to file his lawsuit. As to the sixth cause of action for injunctive relief, Singletary pointed out that the cause of action was directed at Singletary's attempt "to profit," which was "nothing more than a thinly-veiled attack on [Singletary's] petitioning activities in this case."

---

[2] Title 18 United States Code section 666 relates to bribing a public official. Government Code section 1090 concerns financial conflicts of interest in public sales or purchases. Code of Civil Procedure section 128.7, subdivision (b) concerns presenting a court with a pleading or motion. Code of Civil Procedure section 128.7, subdivision (f) relates to awarding punitive damages against a plaintiff when a court determines an action was maintained by a felon against the felon's victim for actions arising out of the relevant felony. Civil Code section 3517 provides, "No one can take advantage of his own wrong." Civil Code section 3521 provides, "He who takes the benefit must bear the burden."

## C. *OPPOSITION TO THE ANTI-SLAPP MOTION*

The City opposed Singletary's anti-SLAPP motion. The City argued that the two purposes of the cross-complaint were (1) to enforce the 1992 contract, and (2) to prevent Singletary from profiting from his illegal activity. The City asserted the anti-SLAPP motion should be denied because (1) the cross-complaint was exempt from the anti-SLAPP provision pursuant to the public interest exception (§ 425.17, subd. (b)); (2) the anti-SLAPP provisions were not applicable to the causes of action in the cross-complaint; and (3) the City was likely to prevail on the merits of its causes of action.

In regard to the public interest exception, the City explained that anti-SLAPP provisions do not apply to lawsuits that are " 'brought solely in the public interest or on behalf of the general public' " if certain conditions exist. The conditions are: (1) "The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member . . ."; (2) "The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons . . ."; and (3) "Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (§ 425.17, subd. (b).)

The City argued that its cross-complaint was brought in the public interest, that it sought reimbursement for past and future expenditures of public funds, and that it aimed to prevent Singletary "from illegally absconding with more funds belonging to the general public." The City asserted that it was not seeking relief greater than or different from the relief sought for the general public. The City reasoned that since it was a public entity, the relief it sought was inherently public.

Further, the City contended that success on the cross-complaint would enforce an important public right affecting the public interest, because the public would benefit from enforcing the 1992 agreement, and from "not allowing wrongdoers to profit from their crimes with taxpayer dollars." The City explained: "Preventing Singletary from profiting by his bribery will deter other would-be criminals from targeting public funds."

In regard to private enforcement, the City asserted it needed to privately enforce the 1992 agreement, because the public criminal action taken by the United States Attorney's Office did not prevent Singletary "from attempting to profit from his crimes." Accordingly, the City concluded that the cross-complaint was exempt from the anti-SLAPP provisions.

As to the issue of protected activity, the City asserted, "Singletary's bribery of Grimsby is not conduct in furtherance of Singletary's first amendment

rights." The City conceded that the filing of a lawsuit was a protected activity, but asserted that "Singletary's lawsuit is anything but legitimate," and to deem such a lawsuit protected "would be [turning] the Code on its head." Further, the City argued that the gravamen of the cross-complaint was the important consideration—not the mere mention of protected activities. The City argued that the gravamen of its "first, second, third and fifth causes of action is to enforce the 1992 Contract." The City asserted that the gravamen of the fourth and sixth causes of action was "restor[ing] to [the City] the benefits taken by Singletary's illegal conduct and to prevent him from profiting further thereby." Alternatively, the City argued that to the extent the fourth and sixth causes of action related to Singletary's right to petition, the anti-SLAPP motion should fail because the City was likely to prevail on the merits.

As to the fourth cause of action, the City argued that bribery of a council person was an unlawful business practice, and Singletary was seeking "to enforce the illegal contract procured by his bribe," which was "unfair and fraudulent," and therefore, "Singletary should be enjoined from seeking to profit from his crime, and [the City] is entitled to restitution." The City reasoned, "While Singletary's acts of filing a civil suit might be protected by the litigation privilege, his underlying attempt to extort more money from [the City] is not."

In regard to the sixth cause of action, the City argued that injunctive relief was warranted because monetary relief would not make the City whole. The City argued injunctive relief was necessary to prevent Singletary from "seeking to profit from his illegal bribe." The City asserted that Singletary had "shown remarkable resourcefulness in trying to procure the benefits from his criminal activity, even several years after he was caught," and a permanent injunction was needed to "combat Singletary's fraud."

## D. REPLY TO THE ANTI-SLAPP OPPOSITION

Singletary filed a reply to the City's opposition to the anti-SLAPP motion. As to the public interest exception, Singletary argued that the City did not plead any facts supporting the application of the public interest exception. In particular, Singletary argued that there was nothing indicating (1) the cross-complaint was filed on behalf of the general public or for the public good, because (a) there was nothing indicating that the City planned to restore the money to the City's taxpayers, (b) there was nothing indicating how many people would be affected by the lawsuit, and (c) the City had a "personal stake" in the lawsuit, so the lawsuit could not have been brought solely on behalf of the public; (2) the City sought relief greater or different than mere restitution to the taxpayers, because the City wanted more than the damages that would be awarded under the 1992 contract—Singletary asserted that the

City wanted "a court declaration that all 'California cities are not liable under quasi-contract theories as a matter of law' "; and (3) the cross-complaint was not necessary because the City already challenged Singletary's complaint by filing a motion for sanctions (§ 128.7). Further, Singletary argued that the City's opposition included a concession that the cross-complaint was based on Singletary's "constitutional right to sue."

### E. *HEARING ON THE ANTI-SLAPP MOTION*

On September 14, 2010, the trial court held a hearing on Singletary's anti-SLAPP motion. At the beginning of the hearing, the trial court stated that its tentative ruling was to grant the anti-SLAPP motion as to the fourth and sixth causes of action, but otherwise deny the motion. The trial court explained, "It seems to me that the City of Colton wants me to adjudicate the merits of the claim, and I cannot do that on these motions. I cannot adjudicate the merits and there's just way too much going on between the different contracts, and you know, what—what went on in the period of time."

As to the fourth cause of action, the trial court said, "It seems to me the whole cause of action for . . . unlawful business practice is, it's an unlawful business practice for him to bring an action against us when he's a convicted criminal. That—not only am I unclear that that can be the basis of an unlawful business practice or a business activity, it's—it's impinging on his right to bring a claim."

The City argued that Singletary's act of filing a lawsuit was not the only act at issue in the fourth and sixth causes of action, and that the claims also addressed his bribery and Singletary's continuing actions with neighboring property owners, developers, and contractors. The City conceded that it perhaps needed to provide more detail in its cross-complaint, but argued that it would be an oversimplification to assert that its claims were based merely upon Singletary filing a lawsuit.

The trial court responded, "But it appears to me that the fourth cause of action, the gravamen of that action is basically that it's an unlawful practice, business practice, for him to pursue his claims for the purpose of obtaining the benefit of his wrongful conduct. That's all I get." As to the sixth cause of action, the trial court found that the request for injunctive relief was not solely linked to the Singletary's lawsuit, but the trial court concluded that the allegations could not be parsed. The trial court said, "you can't separate them out. You can't carve them out. That if it's the subject of protected activity, the entire thing goes."

Singletary then argued that the trial court's conclusion about not parsing meant that the entire cross-complaint should be stricken, because all the

causes of action incorporated a reference to Singletary filing a complaint and, therefore, since items cannot be "carved out" the anti-SLAPP motion should be granted as to the whole cross-complaint. The City argued that incidental allegations in a pleading do not make a cause of action subject to an anti-SLAPP strike.

In response to the parties' arguments, the court said, "SLAPP motions are very, very, very difficult." The trial court explained, "But it's very interesting to me, I don't think it's appropriate to strike . . . all of the causes of action in a complaint because it's related to another cause of action that is subject to an Anti-SLAPP motion and . . . [¶] . . . I could be wrong. [¶] . . . It's inconsistent—I'm not going to change my ruling, but I think maybe . . . that needs to be decided."

The City again argued that there was nothing in the fourth and sixth causes of action specifically referencing Singletary's lawsuit. The City offered to stipulate that it was only seeking to enjoin Singletary's non-lawsuit-related activities—so Singletary would not be enjoined from suing the City. The trial court stated that it felt troubled by having to strike the sixth cause of action, due solely to its association with the fourth cause of action, because it felt there were portions of the sixth cause of action that were appropriate; however, the trial court again concluded that the law required the entire sixth cause of action to be stricken, since it was partially related to protected activity.

The City asked if the trial court considered the public interest exception. The trial court stated that it did consider the argument, but concluded that it did not apply. The trial court explained, "[J]ust because you're a contracting party doesn't mean that you're asserting [an] interest that is solely in the public interest." The City asked, "But whose other interest would . . . [we] be seeking to pursue? We are a public entity." The trial court responded that if such an argument were correct, then anytime a public agency were involved in a lawsuit, then the anti-SLAPP provisions would not apply. The trial court said that if such a rule were made "it would defeat the whole—they should just say that, any governmental entity and it's not that." The City responded that there was very little anti-SLAPP law involving public agencies, because "public entities aren't subject to the SLAPP statute as a practical matter." The trial court concluded that the City had not presented sufficient evidence that the public interest exception applied to the cross-complaint.

The trial court took the matter under submission. The trial court issued a ruling granting the anti-SLAPP motion as to the City's fourth and sixth causes of action. The trial court explained, "The gravamen of these causes of

action is directed to Singletary's filing of the underlying complaint and the City did not meet its burden of demonstrating a probability of prevailing on these causes of action."

## DISCUSSION

### A. *TWO-STEP ANTI-SLAPP PROCESS*

#### 1. *CONTENTION*

The City contends the trial court erred by granting the anti-SLAPP motion as to the fourth and sixth causes of action because (1) the causes of action do not concern protected activity, and (2) the City is likely to prevail on the causes of action. We agree in part, and disagree in part.

#### 2. *ANTI-SLAPP LAW AND STANDARD OF REVIEW*

■ "In 1992, the Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. [Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315 [86 Cal.Rptr.3d 288, 196 P.3d 1094].) Anti-SLAPP motions involve a two-step process. First, the defendant must make a prima facie showing that the plaintiff's causes of action arise from actions by the defendant that were in furtherance of the defendant's right of petition or free speech in connection with a public issue. If the defendant satisfies this threshold burden, then the plaintiff must establish a probability of prevailing on its claims. (§ 425.16, subd. (b)(1); *Club Members*, at pp. 315–316.)

"We independently determine whether a cause of action is based upon activity protected under the statute, and if so, whether the plaintiff has established a reasonable probability of prevailing. [Citation.]" (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056 [18 Cal.Rptr.3d 882].)

#### 3. *PRELIMINARY ISSUES*

##### a) *Language of the Fourth Cause of Action*

The fourth cause of action concerns unfair business practices. (Bus. & Prof. Code, § 17200.) In the "General Allegations" portion of the cross-complaint, the City alleges, "Notwithstanding the [1992] Contract, and further notwithstanding his felony bribery conviction, on January 10, 2008, Singletary filed a

civil lawsuit against Colton which, in substance, seeks to compel Colton to construct the Infrastructure at its own expense. Singletary's complaint and subsequent amended complaints fail to acknowledge the [1992] Contract or the bribery conviction. Moreover, Singletary failed to produce the Contract in written discovery. Ultimately, Colton learned of the existence of the Contract in 2009 through its own independent investigation. The staff members who had been involved with the Contract back in 1992 had long since left the employ of the City."

Within the fourth cause of action, the City realleges and incorporates all of the general allegations, including the one set forth *ante*. The fourth cause of action includes the following allegation: "Singletary has engaged and continues to engage in unlawful, unfair and fraudulent business acts and practices, as more fully set forth above, including but not limited to bribing Grimsby and now attempting to profit by that crime (despite having been caught and having pled guilty to a felony), in violation of various state and federal statutes including without limitation, 18 U.S.C. § 666, California Government Code sections 1090 *et seq.*, California Code of Civil Procedure section 128.7, subdivisions (b) and (f), and California Civil Code section 3517 and 3521."[3]

In the fourth cause of action, Colton alleged that it was "entitled to injunctive relief and restitution orders requiring Singletary to: (a) construct those portions of the Infrastructure which remain to be constructed; (b) reimburse Colton for the portions of the Infrastructure which Colton has already constructed; [and] (c) cease and desist from seeking to profit by his own admitted bribery of Grimsby."

b) *Interpretation of the Fourth Cause of Action*

In reading the fourth cause of action, we have found two separate causes of action that have been combined. The first concerns Singletary's bribery and seeks restitution. The second concerns Singletary's lawsuit and seeks an injunction. We infer that a portion of the cause of action relates to the bribery due to the citations to (1) 18 United States Code section 666, which relates to bribing a public official, and (2) Government Code section 1090, which concerns financial conflicts of interest in public sales or purchases. It can be

---

[3] As set forth *ante*, 18 United States Code section 666 relates to bribing a public official. Government Code section 1090 concerns financial conflicts of interest in public sales or purchases. Code of Civil Procedure section 128.7, subdivision (b) concerns presenting a court with a pleading or motion. Code of Civil Procedure section 128.7, subdivision (f) relates to awarding punitive damages against a plaintiff when a court determines an action was maintained by a felon against the felon's victim for actions arising out of the relevant felony. Civil Code section 3517 provides, "No one can take advantage of his own wrong." Civil Code section 3521 provides, "He who takes the benefit must bear the burden."

reasonably inferred from these legal citations that the City is alleging it is owed restitution due to Singletary's act of bribing Grimsby.

We infer that the second half of the cause of action concerns Singletary's lawsuit against the City due to the citations to Code of Civil Procedure section 128.7, subdivisions (b) and (f). Code of Civil Procedure section 128.7, subdivision (b) concerns presenting a court with a pleading or motion. Code of Civil Procedure section 128.7, subdivision (f) relates to awarding punitive damages against a plaintiff when a court determines an action was maintained by a felon against the felon's victim for actions arising out of the relevant felony. It appears from these legal citations that the City is alleging fault with Singletary's act of filing a lawsuit. Thus, the fourth cause of action presents two theories of liability or fault: (1) bribery (18 U.S.C. § 666; Gov. Code, § 1090), and (2) filing a lawsuit (Code of Civ. Proc., § 128.7, subds. (b) & (f)).

### 4. PROTECTED ACTIVITY

■ As set forth *ante*, when considering an anti-SLAPP motion, it must be determined whether the lawsuit relates to the cross-defendant's acts in furtherance of his "right of petition or free speech . . . in connection with a public issue." (§ 425.16, subd. (b)(1).) " ' "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . ." ' [Citations.]" (*Bleavins v. Demarest* (2011) 196 Cal.App.4th 1533, 1539–1540 [127 Cal.Rptr.3d 580].) Section 425.16, subdivision (e), defines an " 'act in further-ance of a person's right of petition or free speech . . . in connection with a public issue' " as including "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (See also *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 [67 Cal.Rptr.3d 190] [" 'The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.' "].)

Section 128.7, subdivision (b), provides: "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circum-stances, all of the following conditions are met: [¶] (1) It is not being presented primarily for an improper purpose . . . . [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law . . . . [¶] (3) The allegations and other factual contentions have evidentiary support . . . . [¶] (4) The denials of factual contentions are warranted on the evidence . . . ."

As set forth *ante*, a portion of the City's fourth cause of action alleges Singletary "has engaged and continues to engage in unlawful, unfair and fraudulent business acts and practices," in part by violating section 128.7, subdivision (b). As set forth in the paragraph *ante*, section 128.7 relates to the acts of filing motions or pleadings with the court. Further, the "General Allegations" portion of the City's cross-complaint specifically mentions Singletary's act of "fil[ing] a civil lawsuit against Colton." Since this portion of the fourth cause of action concerns Singletary's complaint, the cause of action relates to a writing made in connection with an issue under consideration or review by a judicial body. (§ 425.16, subd. (e).) Thus, the activity is protected because it relates to Singletary's right to petition in connection with a public issue.[4]

In regard to the bribery portion of the fourth cause of action, bribery is not a protected activity. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 328 [46 Cal.Rptr.3d 606, 139 P.3d 2] ["Extortion is not a constitutionally protected form of speech."]; see also *Cross v. Cooper, supra,* 197 Cal.App.4th at pp. 383–384.) Thus, the mixed cause of action has presented us with a quandary: one of the theories of fault (the lawsuit) involves protected activity, while the second theory of fault (bribery) does not involve protected activity.

◼ When a cross-complainant presents a mixed cause of action that involves protected and nonprotected activities, as is the case here, the question presented is "whether the gravamen of the cause of action targets protected activity. [Citation.] If liability is not based on protected activity, the cause of action does not target the protected activity and is therefore not subject to the SLAPP statute. [Citations.]" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550 [110 Cal.Rptr.3d 129].) Stated differently, the question is whether the protected activity is merely an incidental part of the cause of action. (*Id.* at p. 1551.)

◼ The fourth cause of action is partially concerned with the unlawful business practice of bribing Grimsby, and partially concerned with the alleged unfair business practice of Singletary suing to enforce a contract procured by

---

[4] We have considered the possibility Singletary's lawsuit is not a valid exercise of his constitutional rights and therefore is not protected, because he pled guilty to bribing Grimsby in order to procure the 1999 contract, and he is suing to enforce that allegedly illegally gained 1999 contract. (See *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 383–384 [127 Cal.Rptr.3d 903] [illegal acts not protected].) However, our Supreme Court has concluded that a guilty plea is only admissible in a civil case to the extent that it is an admission; it does not serve as collateral estoppel on the issues presented in the civil lawsuit. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co.* (1962) 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439].) Thus, Singletary's guilty plea does not permit this court to conclude Singletary's lawsuit is an invalid exercise of his right to petition, because his guilty plea does not dispositively prove he is suing to enforce a contract that is void as a matter of law.

bribery. Singletary's act of suing the City is a substantial part of the fourth cause of action, because the lawsuit aspect of the cause of action appears to form the sole basis for the request for injunctive relief. The injunction portion of the fourth cause of action complains of Singletary "now attempting to profit by that crime," but does not specifically allege what actions constitute the attempt to profit. The only ongoing conduct alleged in the cross-complaint is found in the "General Allegations" section, and relates to Singletary's lawsuit. (See *Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 463 [30 Cal.Rptr.3d 210] (*Madrid*) ["Injunctive relief is appropriate only when there is a threat of continuing misconduct."]; see also § 525.) Accordingly, it appears from the allegations in the cross-complaint that the injunction portion of the fourth cause of action relates to Singletary's lawsuit. Given that the lawsuit portion of the cause of action appears to be the sole basis for one of the requested forms of relief, we conclude the protected lawsuit activity is not merely an incidental part of the cause of action; rather, a substantial portion of the cause of action is targeted at Singletary's protected lawsuit activity.

The City asserts that any mention of protected activity is only incidental, and therefore, the cause of action does not arise out of protected activity. When the City analyzes the "gravamen" issue, it looks to the entire cross-complaint (as opposed to just the fourth cause of action), and asserts that the only mention of Singletary's lawsuit is in one paragraph of the general allegations; the City then reasons that since Singletary's lawsuit is only mentioned once in the whole cross-complaint, the protected activity is not the gravamen of the cross-complaint.

The City seems to be urging this court to follow this court's rule that an anti-SLAPP motion should be considered based upon the overall thrust of the cross-complaint, as opposed to individual causes of action. (*M. G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 637 [107 Cal.Rptr.2d 504] [Fourth Dist., Div. Two] (*M.G.*).) In *M.G.*, this court concluded it was not necessary to consider "individual causes of action" for an anti-SLAPP motion. (*Ibid.*) However, the City does not reconcile this legal principle with this court's conclusion in *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1004 [113 Cal.Rptr.2d 625] [Fourth Dist., Div. Two] (*ComputerXpress*), in which we distinguished *M.G.*, and concluded it *was* proper to consider individual causes of action for purposes of an anti-SLAPP motion.

■ In *ComputerXpress*, we explained it was proper to consider individual causes of action when the different causes of action are not based on the same underlying conduct. We explained the individual causes of action in *M.G.* did not need to be considered separately because they were all based on the same underlying conduct, and four of the six causes of action were "in reality, the same two causes of action, based on four different legal theories." (*ComputerXpress, supra,* 93 Cal.App.4th at p. 1004.)

In the instant case, the City's first cause of action concerned breach of contract due to Singletary not constructing the infrastructure; the second cause of action related to breach of the implied covenant of good faith and fair dealing due to Singletary bribing Grimsby; the third cause of action alleged unjust enrichment due to the City already constructing a portion of the infrastructure; the fourth cause of action concerned unfair business practices related to Singletary bribing Grimsby and filing his lawsuit (§ 128.7, subds. (b) & (f)); the fifth cause of action requested declaratory relief because the 1992 contract was still valid; and the sixth cause of action sought an injunction which, among other things, would require Singletary to "cease and desist from seeking to profit by [his] bribery of Grimsby."

The fourth and sixth causes of action both concern Singletary's act of suing the City, or, stated differently, "seeking to profit"; however, the other causes of action do not concern this same behavior—they concern the acts of bribery or not constructing the infrastructure. Since the causes of action are not based upon the same underlying activities, we conclude the rule from *ComputerXpress* applies in this case, as opposed to the rule from *M.G.* Therefore, the trial court correctly considered the individual causes of action when ruling on the anti-SLAPP motion. As a result, we are not persuaded by the City's argument that the overall thrust of the cross-complaint should prevail over allegations in the individual causes of action. (See *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1189–1190 [128 Cal.Rptr.3d 205] (*Wallace*) ["[W]e must look at the nature of the specific '*act*' that allegedly gives rise to the cause of action, not the gestalt or gist of the allegations generally."].)

In a separate argument, the City asserts that the litigation privilege (Civ. Code, § 47) does not make Singletary's lawsuit a protected activity, because the privilege only concerns torts. The City asserts that it "is not suing in tort here, but rather is seeking an injunction." Contrary to the City's position, Singletary's lawsuit is not a protected activity pursuant to the litigation privilege (Civ. Code, § 47); rather, it is a protected activity pursuant to the enumerated protected activities in the anti-SLAPP statute (Code Civ. Proc., § 425.16, subd. (e)). Accordingly, we find the City's argument to be unpersuasive, because it is somewhat off topic.

## 5. *PROBABILITY OF PREVAILING*

When considering whether a cross-complainant is likely to prevail on its claims, we do not consider the credibility of the evidence nor do we compare the weight of the evidence; rather, we accept as true the evidence that is favorable to the cross-complainant and evaluate the cross-defendant's evidence only for purposes of determining whether it has defeated the

cross-complainant's evidence as a matter of law. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 [124 Cal.Rptr.3d 256, 250 P.3d 1115].)

■ Business and Professions Code section 17200 prohibits any unlawful, unfair or fraudulent business act or practice. The code section " 'borrows' violations from other laws by making them independently actionable as unfair competitive practices. [Citation.] In addition, under section 17200, 'a practice may be deemed unfair even if not specifically proscribed by some other law.' [Citation.]" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

■ We first address the bribery allegation. Singletary was convicted of bribing a local government agent. (18 U.S.C. § 666.) The record includes evidence of the criminal information, Singletary's written plea, a reporter's transcript from the guilty plea proceedings, and the written factual basis for the plea, which provides that Singletary "corruptly" gave cash payments to Grimsby. As set forth *ante*, a guilty plea does not serve as collateral estoppel in a civil lawsuit, but it does serve as an admission. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., supra*, 58 Cal.2d at p. 605.) Given the amount of evidence related to Singletary's bribery of Grimsby, it is probable that the City will be able to show Singletary procured the 1999 contract by bribery. Further, since bribery is an unlawful act (18 U.S.C.S. § 666), it will likely qualify as an unfair business practice. Accordingly, the City has established a probability of prevailing on the portion of the fourth cause of action related to bribery.

Next, we address the portion of the fourth cause of action that concerns Singletary's lawsuit. Assuming for the moment that a lawsuit can constitute an unfair, unlawful, or fraudulent business practice, the City has not shown a likelihood of prevailing on this theory of liability because the City has not included Singletary's complaint among its exhibits.[5] Without evidence of Singletary's complaint against the City, there is no means for evaluating whether Singletary's lawsuit constitutes an unlawful, unfair, or fraudulent business practice. (See *Santa Barbara County Coalition Against Automobile Subsidies v. Santa Barbara County Assn. of Governments* (2008) 167 Cal.App.4th 1229, 1237 [84 Cal.Rptr.3d 714] [Probability of prevailing is determined by examining cross-plaintiff's evidence to determine if there is a

---

[5] The City attached the following exhibits to its opposition to the anti-SLAPP motion: (1) the 1992 contract; (2) a parcel map related to the subdivision of Singletary's property; (3) Singletary's plea agreement; (4) the criminal information filed against Singletary; (5) a reporter's transcript of Singletary's plea hearing; (6) a report by the Federal Bureau of Investigation related to Singletary's offense; (7) a deposition of Singletary; (8) a letter notifying Singletary of the City's demand that he construct the infrastructure per the 1992 agreement; and (9) a declaration by the City's attorney reflecting that he lives in the area of Singletary's property and could testify in the case.

prima facie case.]; see also *Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714 [54 Cal.Rptr.3d 775, 151 P.3d 1185] (*Taus*) ["prima facie showing"].)

■ Nevertheless, if the City had included a copy of the complaint, it is questionable whether the City would have a probability of prevailing on the theory that a lawsuit is an unfair business practice. Civil Code section 47, subdivision (b), protects communications that are part of litigation. The privilege is designed to " 'immuniz[e] participants from liability for torts arising from communications made during judicial proceedings.' " (*Flatley v. Mauro, supra*, 39 Cal.4th at p. 322.) As a result, "the privilege is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.' [Citation.] The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.' [Citations.]" (*Ibid.*) Our Supreme Court has referred to the litigation privilege as " ' "absolute." ' " (*Ibid.*) Given the "absolute" privilege surrounding litigation communications, it is highly questionable the City could succeed on its claim that Singletary's lawsuit is an unfair business practice.

In sum, given the lack of evidence and the questionable legal footing of the lawsuit portion of the City's unfair business practices claim, we conclude the City has not shown a probability of prevailing on the portion of the cause of action that focuses on Singletary's act of filing a lawsuit. (§ 128.7, subds. (b) & (f).)

As to the sixth cause of action for injunctive relief, the City sought "a temporary restraining order, preliminary injunction, and permanent injunction requiring [Singletary] to (a) construct those portions of the Infrastructure which remain to be constructed; (b) reimburse [the City] for the portions of the Infrastructure which Colton has already constructed; (c) cease and desist from seeking to profit by Singletary's bribery of Grimsby."

■ "An injunction is a writ or order requiring a person to refrain from a particular act." (§ 525.) Thus, "the general rule is that an injunction may not issue unless the alleged misconduct is ongoing or likely to recur." (*Madrid, supra*, 130 Cal.App.4th at p. 464.)

Since an injunction requires a person to *refrain* from conduct, the City is not likely to prevail on its request for an injunction requiring Singletary to (1) construct infrastructure, and (2) reimburse the City, since those are acts the City *wants performed*. The City appears to be requesting damages and an order for specific performance, as opposed to an injunction. Thus, it is unlikely the City will prevail on this portion of its request for an injunction, since it is requesting Singletary to perform actions rather than refrain from actions.

As to the portion of the sixth cause of action that requests an injunction preventing Singletary from "seeking to profit by Singletary's bribery of Grimsby," we are brought back to our discussion of the litigation privilege *ante*. "[T]he general rule is that an injunction may not issue unless the alleged misconduct is ongoing or likely to recur." (*Madrid, supra*, 130 Cal.App.4th at p. 464.) The only ongoing conduct alleged in the City's complaint is Singletary's lawsuit. Nevertheless, we have examined the exhibits to determine if there is any evidence of other ongoing attempts to "seek profit."

In his deposition, Singletary admitted giving money to Grimsby, and that the money was not a campaign contribution. Singletary testified about the FBI investigation and his guilty plea. Singletary admitted to signing the 1992 agreement. Singletary further testified that constructing the infrastructure would cost approximately "3 to 6 million," and that such expenditures were "not feasible." Singletary testified that sometime around 2007, after he had pled guilty, he spoke to City officials or staff about constructing the infrastructure pursuant to the 1999 agreement. Singletary also stated that neighboring property owners had assigned their rights to him to proceed with a lawsuit on their behalf.

Much of the testimony in Singletary's deposition concerned past acts— things that happened years prior to the cross-complaint being filed. Given the exhibits, it is unclear what ongoing attempts, if any, Singletary has made to profit from his bribery—again noting that Singletary's complaint is not among the exhibits. Given the lack of evidence supporting the allegation that Singletary has continued to attempt to profit from his bribery, such that an injunction should issue, we conclude the City has failed to establish a probability of prevailing on the sixth cause of action—the request for injunctive relief.

The City does not provide an argument concerning the ongoing attempts allegation, or an argument related to how it established a probability of needing an injunction preventing Singletary from persisting in his alleged attempts to profit from his bribery. The City only asserts that it has established a probability of prevailing on the bribery portion of the fourth cause of action.

### 6. *MIXED RESULT*

Given the foregoing analysis, we are confronted with the following situation: What should be the result of an anti-SLAPP motion when a combined, or mixed, cause of action includes one allegation of *unprotected* activity, in which the cross-complainant *has* established a probability of prevailing, and a second allegation of *protected* activity, in which the cross-complainant *has*

*not* established a probability of prevailing. We conclude that the lawsuit-related allegations may be parsed from the causes of action and stricken, while the allegations related to nonprotected activity may remain as part of the complaint.

Our Supreme Court provided guidance on the issue in *Taus, supra*, 40 Cal.4th 683. In *Taus*, the plaintiff's complaint set forth four causes of action: (1) negligent infliction of emotional distress; (2) invasion of privacy; (3) fraud; and (4) defamation. (*Id.* at pp. 701–702.) The appellate court separated the invasion of privacy cause of action into two distinct torts: (a) improper public disclosure of private facts, and (b) improper intrusion into private matters. (*Id.* at p. 705.) The defamation cause of action also contained a mixture of allegations. One portion of the defamation allegations related to the actions of one defendant, while another portion of the defamation allegations related to a second defendant. (*Id.* at p. 702.)

Our Supreme Court granted review to decide "whether the Court of Appeal properly concluded that dismissal under the anti-SLAPP statute was improper with regard to plaintiff's claims relating to . . . four incidents or conduct." (*Taus, supra*, 40 Cal.4th at p. 711.) "More precisely, the question was whether the plaintiff had established a probability of prevailing as to certain contentions of liability that were a *subset* of the plaintiff's purported causes of action and lawsuit. [Citation.]" (*Wallace, supra*, 196 Cal.App.4th at p. 1209.)

The high court concluded the plaintiff was suing over conduct that fell within the scope of the anti-SLAPP provision. Thus, the "arising out of" prong was satisfied. (See *Taus, supra*, 40 Cal.4th at pp. 712–713.) The court then focused on the "probability of prevailing" prong. The court examined the plaintiff's probability of prevailing on each allegation of improper conduct. For example, as to the second cause of action, our Supreme Court concluded the plaintiff (1) did not establish a prima facie case for improper disclosure of private facts based upon one of the defendant's statements in October 2002 (*id.* at p. 719); (2) did not establish a prima facie case of improper disclosure of private facts based upon one of the defendants using the plaintiff's initials during a deposition (*id.* at p. 724); (3) did not establish a prima facie case of intrusion into private matters based upon the defendants' collecting and disseminating information from court records (*id.* at p. 726); and (4) did establish a prima facie case for intrusion into private matters against one of the defendants for an act of misrepresentation (*id.* at pp. 740–741). Thus, our Supreme Court concluded the plaintiff's case could not go forward as to three acts of conduct, but it could proceed as to the allegation of improper intrusion into private matters, as it related to the act of misrepresentation. (*Id.* at p. 742.)

■ From the *Taus* opinion, we learn "that each challenged basis for liability must be examined individually to determine if the plaintiff has demonstrated a probability of prevailing, and if the plaintiff has failed to do so, then that basis [and that basis alone must be] stricken from the plaintiff's pleading." (*Wallace, supra*, 196 Cal.App.4th at p. 1209.) In other words, *Taus* shows us that a portion of a cause of action may be stricken if it falls within anti-SLAPP protections. (*Wallace,* at p. 1209; *Taus, supra,* 40 Cal.4th at p. 742.)

Given the ruling in *Taus*, we conclude that the portions of the fourth and sixth causes of action that concern Singletary's lawsuit activity must be stricken from the complaint. As to the fourth cause of action, we will strike the citation to Code of Civil Procedure section 128.7, which relates to filing a complaint, and Civil Code section 3517, which concerns not taking advantage of one's own wrong actions. Also in the fourth cause of action, we will strike the following language related to the requested injunction: "(c) cease and desist from seeking to profit by his own admitted bribery of Grimsby." In the sixth cause of action, we will strike the portion that reads, "(c) cease and desist from seeking to profit by Singletary's bribery of Grimsby." In the general allegations section, we will strike the portion of paragraph eight that reads, "Notwithstanding the Contract, and further notwithstanding his felony bribery conviction, on January 10, 2008, Singletary filed a civil lawsuit against Colton which, in substance, seeks to compel Colton to construct the Infrastructure at its own expense. Singletary's complaint and subsequent amended complaints fail to acknowledge the Contract or bribery conviction."

In the City's supplemental brief, it suggests three different paths for this court to take: (1) retain the entire mixed cause of action because part of it has merit; (2) strike the portions of the mixed cause of action that fall within anti-SLAPP protections; or (3) strike the entire mixed cause of action, but permit the City to reallege the non-SLAPP portion of the cause of action by way of amendment. We have followed the second path, because our Supreme Court's precedent supports striking a portion of a cause of action. We briefly address the other two options presented by the City.

The City suggests that the entire cause of action be retained, since a portion of the mixed cause of action is not protected by the anti-SLAPP statute. The problem with this suggestion is that it would permit plaintiffs to circumvent the anti-SLAPP statute by mixing causes of action. "Indeed, all the plaintiff would have to do would be to show some modicum of merit to [his] claims based on *un*protected activity, and the trial court would never even have to look at the merit of the claims targeting protected activity." (*Wallace, supra,* 196 Cal.App.4th at p. 1202.) Given that the anti-SLAPP statute could be easily circumvented by retaining the entire cause of action, we reject the City's first suggestion.

The City's third suggestion is that the entire cause of action be stricken, but that it be permitted to reallege the portion of the cause of action that concerns non-SLAPP activity. We reject this suggestion because there is a history of case law setting forth the rule that a party cannot amend around a SLAPP motion. (*Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869, 880 [100 Cal.Rptr.3d 771]; *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc., supra*, 122 Cal.App.4th at pp. 1054–1055; *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073–1074 [112 Cal.Rptr.2d 397].) We are not inclined to create instability in this rule by permitting a plaintiff to amend its pleading. Thus, we reject this third option.

### B. *PUBLIC ENFORCEMENT EXCEPTION*

The City contends the trial court erred by granting the anti-SLAPP motion as to counts 4 and 6 because the cross-complaint is exempt from the anti-SLAPP provisions pursuant to the public enforcement exception. (§ 425.16, subd. (d).) Singletary asserts the City forfeited this argument by failing to raise it in the trial court. We assume the matter has not been forfeited, but disagree with the City.

We begin this section with the forfeiture issue. " 'The rule is well settled that the theory upon which a [matter] is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' [Citations.]" (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350–1351, fn. 12 [82 Cal.Rptr.3d 229, 190 P.3d 586].) Nevertheless, "[a] party may raise a purely legal issue for the first time on appeal. [Citation.]" (*Craig v. County of Los Angeles* (1990) 221 Cal.App.3d 1294, 1299, fn. 3 [271 Cal.Rptr. 82].)

The City contends that it "in no way waived its right to raise the 'prosecutorial exemption,' which applies as a matter of law." For the sake of judicial efficiency, we will assume, without deciding, that the question of whether the prosecutorial exception applies is purely legal; therefore, the issue may be raised for the first time on appeal.

Section 425.16, subdivision (d), provides that anti-SLAPP provisions "shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor."

The cross-complaint was brought in the name of the City. The cross-complaint was not "brought in the name of the people of the State of California." (§ 425.16, subd. (d).) Since the suit was not brought in the name of the People, we conclude the prosecutorial exception does not apply to the cross-complaint.

The City argues that a lawsuit does not need to literally be "brought . . . in the name of the people of the State of California" for the prosecutorial exception to apply. The City relies on *City of Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302 [3 Cal.Rptr.3d 473] (*Long Beach*), to support its argument. In *Long Beach*, the lawsuit concerned campaign contributions that violated the local municipal code. The complaint sought injunctive relief from further violations. (*Id.* at p. 304.) The trial court granted the defendant citizens group's anti-SLAPP motion on the basis that the lawsuit was aimed at denying the group's freedom of speech. (*Id.* at pp. 304–305.)

On appeal, the City of Long Beach argued that the complaint was exempt from the anti-SLAPP provisions pursuant to the prosecution exception (§ 425.16, subd. (d)). (*Long Beach, supra,* 111 Cal.App.4th at p. 306.) The defendant citizens group asserted that the exception did not apply because the lawsuit was brought in the name " 'City of Long Beach, a municipal corporation,' " and that the matter was civil, therefore the City of Long Beach was not acting as a prosecutor. The City of Long Beach argued the city attorney was enforcing municipal laws on behalf of its citizens, a subset of the People of the State of California. The City of Long Beach argued that exempting only criminal prosecutions from anti-SLAPP motions would "exalt form over substance." (*Ibid.*)

The appellate court, relying on *People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 446–447 [104 Cal.Rptr.2d 618], concluded: "There is no question that subdivision (d) applies to civil enforcement actions." However, the court questioned whether the exception "applies only to those civil enforcement actions initiated in the name of the People of the State of California or, notwithstanding the literal language of the subdivision, applies more broadly to any civil enforcement action initiated by a city attorney . . . to enforce laws intended to protect the public." (*Long Beach, supra,* 111 Cal.App.4th at p. 307.)

The appellate court considered the legislative history in analyzing the issue. The opinion refers to statements by Governor Pete Wilson; the beliefs of the bill's author, Senator Bill Lockyer; as well as comments by the Assembly Subcommittee on the Administration of Justice. (*Long Beach, supra,* 111 Cal.App.4th at p. 308.) Ultimately, the appellate court reasoned that if the defendant citizens group's arguments were followed, then "any political committee could avoid having to comply with local election laws . . . ." The appellate court concluded that such a result was not intended by the Legislature, and the defendant citizens group could not "use section 425.16 as a shield behind which to hide from otherwise valid local election regulations." The court held that the complaint was exempt from the anti-SLAPP provisions. (*Id.* at p. 309.)

 We do not find *Long Beach* to be persuasive authority. The well-settled rule of statutory construction is that " 'we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, [then] we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]' [Citation.]" (*Long Beach, supra*, 111 Cal.App.4th at p. 305.) The language of section 425.16, subdivision (d), is clear and unambiguous: the subdivision applies only to lawsuits "brought in the name of the people of the State of California." There is nothing confusing or contradictory about the statutory language. Accordingly, we disagree with the *Long Beach* opinion's reasoning because it goes beyond the plain language of the statute, despite the clarity of the statute's wording.

It appears from the *Long Beach* opinion that the appellate court went beyond the plain language of the statute based on the legal principal that "the ' " 'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " ' [Citation.]" (*Long Beach, supra*, 111 Cal.App.4th at p. 305.) It appears the appellate court found the absurd result would be "any political committee could avoid having to comply with local election laws . . . ." (*Id.* at p. 309.) We disagree that the "absurd results" exception to the plain language rule is applicable in such a scenario, because the "[v]iolation of a city ordinance is a misdemeanor unless by ordinance it is made an infraction[, and the] violation of a city ordinance may be prosecuted by city authorities *in the name of the people of the State of California*, or redressed by civil action." (Gov. Code, § 36900, subd. (a), italics added.) Since the suit against the political committee could have been brought in the name of the People, we disagree that a political committee could avoid local election laws via the anti-SLAPP provisions. Accordingly, we disagree that the "absurd result" exception to the plain language rule is necessarily applicable. In sum, we are not persuaded by the *Long Beach* reasoning and disagree with its conclusion that a lawsuit brought in the name of a municipality will qualify for the prosecutorial exception.

## C. *PUBLIC INTEREST EXCEPTION*

The City contends the trial court erred by granting the anti-SLAPP motion as to the fourth and sixth causes of action, because the cross-complaint is exempt from the anti-SLAPP provisions pursuant to the public interest exception. (§ 425.17, subd. (b).) We disagree.

Section 425.17, subdivision (b), provides an exception to the anti-SLAPP provisions for public interest lawsuits. The language of the subdivision is as

follows: "Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist:

"(1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public . . . . A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision.

"(2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.

"(3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter."

As to the third factor, while private enforcement might be necessary in this case, it is unclear how the fourth cause of action places a disproportionate financial burden on the City in relation to its stake in the matter. The fourth cause of action does not seek to protect the interest of another, or the interest of an entity greater than the City, e.g., these causes of action do not equate to a single individual suing to protect a public park for the benefit of many citizens. The fourth cause of action alleges that Singletary's actions "present a continuing threat to *Colton's financial well-being*," and that "maintaining the status quo is substantially outweighed by the harm and *injury to Colton*." (Italics added.) Accordingly, it appears from the record that the financial burden on the City is in direct proportion to its stake in the matter. There are no allegations that the fourth cause of action relates to a broader segment of the public, rather, the sole focus is on an injury to the City itself. Since the third factor is not satisfied, we conclude the public interest exception does not apply to the cross-complaint.

The City contends that the third factor of the public interest exception is satisfied because the City must bear the burden of the lawsuit, while the benefits of enforcing antibribery laws and the 1992 agreement will flow to the public. We first address the portion of the argument related to enforcing the 1992 agreement. While the overall thrust of the City's cross-complaint might be the enforcement of the 1992 agreement, the lawsuit portion of the fourth cause of action—the citation to section 128.7—does not concern specific performance or damages, such that the infrastructure will be constructed, thereby creating a benefit for the public. Rather, the lawsuit portion of the cause of action seeks an injunction prohibiting Singletary from seeking to profit from his bribery. Since the lawsuit portion of the cause of action does not relate to the construction of the infrastructure, we are not

persuaded by the City's argument that it bears a disproportionate financial burden because the public will be the beneficiary of enforcing the 1992 agreement.

Second, we address the argument related to enforcing the bribery laws. While the City is correct that the public may receive a benefit from the bribery laws being enforced, it is unclear how the City is bearing a disproportionate financial burden. The cause of action alleges only that the injunction and restitution will protect "Colton's financial well-being." Since it is only the City's finances that will be protected by the restitution and injunction, it appears that the City's financial burden is in direct proportion to its stake in the matter. In sum, we find the City's argument to be unpersuasive.

## D. *REVIEW OF THE ATTORNEY FEE AWARD*

### 1. *PROCEDURAL HISTORY*

In the City's notice of appeal, it declared its intent to appeal the trial court's orders (1) partially granting the anti-SLAPP motion, and (2) awarding attorney's fees to Singletary. On December 17, 2010, this court ordered that the portion of the appeal related to the award of attorney's fees be dismissed without prejudice, because "[a]n order granting a motion for attorney's fees and costs related to a ruling on a special motion to strike is not an appealable order. (*Doe v. Luster* (2006) 145 Cal.App.4th 139, 145–150 [51 Cal.Rptr.3d 403].)"

On December 27, 2010, the City filed a motion for reconsideration of this court's order dismissing the attorney's fees portion of the appeal. The City asserted that a recently published case, *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265 [117 Cal.Rptr.3d 153], directly contradicted *Doe* on the issue of whether an order awarding anti-SLAPP attorney's fees is directly appealable. The City noted that *Baharian* was issued by the Fourth District Court of Appeal, Division Three, while *Doe* was decided by the Second District Court of Appeal, Division Seven. The City argued "that the Fourth Appellate District should follow its own recent precedent in *Baharian*," as opposed to an opinion from another appellate district. The City asserted that the *Doe* opinion leads to a waste of judicial resources.

On January 14, 2011, this court vacated its prior dismissal order, and reinstated the portion of the City's appeal concerning the award of attorney's fees. In the order, this court explained that both *Doe* and *Baharian* concerned *discretionary* attorney fee awards for the *plaintiffs*, after the trial court found that the defendants' anti-SLAPP motions were frivolous or solely intended to cause unnecessary delay (§ 425.16, subd. (c)(1)), whereas, the attorney fee

award in the instant case concerned a *mandatory* fee award for *defendant*, due to defendant partially prevailing on the anti-SLAPP motion (§ 425.16, subd. (c)(1)). Despite the difference, this court concluded that the *Doe* and *Baharian* opinions were arguably conflicting with one another. Therefore, this court directed the parties to brief the following issue on appeal: "[W]hether the order granting the prevailing defendant's motion for an award of attorney's fees and costs in conjunction with its special motion to strike is an appealable order."

## 2. *ANALYSIS*

### a) *Contention*

The City contends that the order awarding Singletary attorney's fees is directly appealable. Singletary disagrees with the City's position—arguing that the attorney fee order is *not* directly appealable. We agree with the City.

### b) *Plain Language*

■ "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent. [Citation.]" (*Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165 P.3d 118].)

■ Section 904.1 sets forth a list of appealable judgments and orders. Section 904.1 is a codification of the "one final judgment rule," and lists the exceptions to the rule. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 740–741 [29 Cal.Rptr.2d 804, 872 P.2d 143].) Included in the section 904.1 list of exceptions to the one final judgment rule are (1) an interlocutory judgment for sanctions in an amount exceeding $5,000; (2) an order for sanctions in an amount exceeding $5,000; and (3) "an order granting or denying a special motion to strike under Section 425.16." (§ 904.1, subd. (a)(11)–(13).) The list includes approximately 13 separate types of orders and judgments that may be directly appealed, and provides that only the enumerated interlocutory judgments may be directly appealed, thus excluding any interlocutory judgments that are not on the list. (§ 904.1, subd. (a)(1).) An interlocutory judgment is one that "disposes of *fewer* than all of the causes of action framed by the pleadings," such that a cause of action is still pending between the parties despite the judgment. (*Morehart*, at p. 741.)

The plain language of section 904.1 does not include an award of attorney's fees among the exceptions to the one final judgment rule. The statute mentions sanctions, and the granting or denial of an anti-SLAPP motion, but does not, by its plain language, make an order for attorney's fees directly appealable. Accordingly, based upon the plain language of section 904.1, it appears that the award of attorney's fees is *not* directly appealable.

### c) *Collateral Order Exception*

██ "One exception to the 'one final judgment' rule codified in . . . section 904.1 is the so-called collateral order doctrine. Where the trial court's ruling on a collateral issue 'is substantially the same as a final judgment in an independent proceeding' [citation], in that it leaves the court no further action to take on 'a matter which . . . is severable from the general subject of the litigation' [citation], an appeal will lie from that collateral order even though other matters in the case remain to be determined. [Citation.] . . . [¶] In determining whether an order is collateral, 'the test is whether an order is "important and essential to the correct determination of the main issue." If the order is "a necessary step to that end," it is not collateral. [Citations.]' [Citation.]" (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561 [101 Cal.Rptr.2d 86].) Generally, in order for the collateral order to be appealable, the order " 'must direct the payment of money by appellant or the performance of an act by or against him.' [Citations.]" (*Ibid.*)

For example, this court recently faced the following situation: the appellant challenged an order to tax costs, which was rendered after this court reversed the trial court's original judgment, but prior to the trial court entering a new final judgment. The appellant did not appeal from the final judgment. (*Krikorian Premiere Theatres, LLC v. Westminster Central, LLC* (2011) 193 Cal.App.4th 1075, 1078 [123 Cal.Rptr.3d 379] [Fourth Dist., Div. Two].) We concluded that the order taxing costs "is appealable under the collateral order doctrine," because the issues of (1) who is entitled to costs, and (2) the appropriate amount of costs "can be decided independently from any other issues in the action." (*Id.* at p. 1083.)

██ The order awarding attorney's fees to a prevailing defendant in an anti-SLAPP case emanates from the anti-SLAPP statute, which provides, "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs," except as otherwise set forth in the statute. (§ 425.16, subd. (c)(1).) Since the attorney fee award is associated with the anti-SLAPP statute it has little to do with the main causes of action in the case; rather, it is an ancillary issue growing out of the anti-SLAPP motion. Further, the attorney fee order directs the appellant to pay money to the respondent, which is an important consideration in determining if an order

meets the collateral order exception. Thus, since the attorney fee order is (1) independent of the main causes of action, and (2) involves the payment of money by the appellant, we conclude it qualifies for the collateral order exception, and is directly appealable.

Singletary argues that the plain language of section 904.1 should control, and asserts that exceptions to the one final judgment rule should not be permitted unless authorized by statute. Singletary does not explain how the collateral order exception should, or should not, apply in this case. Given the lack of argument related to the collateral order exception, we are not persuaded by Singletary's position that the fee award is not directly appealable.

### E. PREVAILING PARTY

The City contends the trial court erred in ruling on Singletary's motion for attorney's fees because it incorrectly found that Singletary was the prevailing party on the anti-SLAPP motion.[6] We disagree.

"The anti-SLAPP statute reflects the Legislature's 'strong preference for awarding attorney fees to successful defendants.' [Citation.] The term 'prevailing party' must be 'interpreted broadly to favor an award of attorney fees to a partially successful defendant.' [Citation.] However, a fee award is not required when the motion, though partially successful, was of no practical effect. [Citation.] '[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion. The determination whether a party prevailed on an anti-SLAPP motion lies within the broad discretion of [the] trial court.' [Citation.]" (*Lin v. City of Pleasanton* (2009) 176 Cal.App.4th 408, 425–426 [96 Cal.Rptr.3d 730].) We review the record to determine if the trial court abused its discretion. (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340 [42 Cal.Rptr.3d 607].)

In response to the City questioning the trial court about its tentative ruling to declare Singletary the prevailing party, the trial court said the following, "[Singletary is] the prevailing party on the two causes of action, and I allocated fees based upon that. I agreed with counsel's analysis that [Singletary]

---

[6] The City initially frames its contention as, the trial court failed to apply the correct legal standard when considering the attorney's fee issue. However, the substance of the City's argument is that the trial court erred in finding that Singletary prevailed on the anti-SLAPP motion. The City offers nothing substantive regarding how the trial court allegedly applied an incorrect legal standard. Thus, we reframe the City's argument to comport with the contention actually raised on appeal.

prevented the City from compelling [him] to undertake significant construction and work, and I think that is a significant victory for [him]."[7]

After the partial granting of the anti-SLAPP motion, the City was left with causes of action for (1) breach of contract, which sought actual and consequential damages; (2) breach of the implied covenant of good faith and fair dealing, which sought actual and consequential damages; (3) unjust enrichment, which sought restitution for the money spent on infrastructure already constructed; and (4) declaratory relief, which requested a declaration of the parties rights in relation to the 1992 and 1999 contracts.

As a result of the anti-SLAPP motion, the City lost its causes of action for (1) unfair business practices, which sought an injunction requiring Singletary to construct the remaining infrastructure; (2) reimbursement for the infrastructure already constructed by the City; and (3) an injunction ordering Singletary to "cease and desist from seeking to profit by his own admitted bribery of Grimsby." The injunction and specific performance relief requested in the fourth and sixth causes of action were not requested elsewhere in the complaint. Thus, by prevailing on the anti-SLAPP motion, Singletary obtained a significant victory—eliminating the City's requests for an order of specific performance and a cease and desist order. Based upon this victory, the trial court could reasonably find that Singletary obtained a practical benefit from bringing the motion. Accordingly, we conclude the trial court did not abuse its discretion.

The City concludes the trial court erred because the absence of the fourth and sixth causes of action "will have no impact whatsoever on this case." The City points out that the parties will still have to litigate the remaining issues (so their work is not lessened), and Singletary is potentially still liable for millions of dollars in damages. The City argues that the remaining causes of action are "the most important ones," and causing the City to lose the fourth and sixth causes of action "accomplished nothing."

Contrary to the City's position, the relevant test is not whether the defendant gained "the most important" benefit, it is whether the defendant obtained practical benefit. Singletary gained a practical benefit from partially prevailing on the anti-SLAPP motion, because he caused the request for

---

[7] We analyze this issue as it was presented in the briefs, as opposed to skipping over it or reframing it due to our partial reversal on the anti-SLAPP ruling, because the City is arguing it should not have been ordered to pay attorney's fees. Arguably, if the City should not have been required to pay attorney's fees following the striking of the fourth and sixth causes of action in their entirety, then the City would not be responsible for attorney's fees following the partial reversal. Thus, the attorney fee issue is still relevant as it was presented in the briefs, because if the City is correct then it could be free from having to pay attorney's fees.

specific performance relief to be stricken, and removed the associated injunction request related to his attempts to profit. Therefore, while the City may deem its fourth and sixth causes of action to be trifling matters, it was reasonable for the trial court to find that Singletary received a practical benefit from his anti-SLAPP motion.

We analyzed the fee issue as it was presented by the City in order to determine whether the trial court erred in ordering the City to pay attorney's fees, because, arguably, if the City should not have been required to pay attorney's fees when the entirety of the fourth and sixth causes of action were stricken, then it should not be required to pay attorney's fees following our partial reversal. Since we did not find an error with the attorney fee order, but we did partially reverse the ruling on the anti-SLAPP motion, we anticipate that the trial court will need to reconsider the attorney fee issue. We express no opinion as to whether attorney's fees should be awarded following the partial reversal.

### F. AMOUNT OF ATTORNEY'S FEES

The City contends the trial court erred by awarding Singletary $5,750 in attorney's fees, because Singletary did not submit billing records or invoices, such that the trial court could properly analyze the amount of fees to award. We disagree.[8]

We apply the abuse of discretion standard when reviewing a trial court's ruling on an attorney fee award. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322 [81 Cal.Rptr.3d 866] (*Christian Research*).)

▮▮▮ "As the moving party, the prevailing defendant seeking fees and costs ' "bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." [Citation.] To that end, the court may require [a] defendant[] to produce records sufficient to provide " 'a proper basis for determining how much time was spent on particular claims.' " [Citation.] The court also may properly reduce compensation on account of any failure to maintain appropriate time records. [Citation.]' [Citation.] The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended. [Citation.]" (*Christian Research, supra*, 165 Cal.App.4th at p. 1320.)

▮▮▮ "Although a fee request ordinarily should be documented in great detail, it cannot be said . . . that the absence of time records and billing

---

[8] The amount of attorney's fees awarded to Singletary may change following this appeal. Nevertheless, we address this issue for the sake of thoroughness and because it might help provide guidance in a subsequent hearing in this case.

statements deprive[s] [a] trial court of substantial evidence to support an award . . . ." (*Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587 [46 Cal.Rptr.2d 677].) "[T]he verified time statements of [an] attorney[], as [an] officer[] of the court, are entitled to credence in the absence of a clear indication the records are erroneous." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 396 [33 Cal.Rptr.3d 644] (*Horsford*).)

Singletary's trial counsel, Courtney M. Coates, attached a declaration to Singletary's motion for attorney's fees. In the declaration, Coates declared he was charging Singletary an hourly rate of $250. Coates explained he was transitioning into running his own firm, and that at his prior firm, his hourly rate was $320. Coates declared he "spent 30.4 hours in connection with defeating the fourth and sixth causes of action." Coates wrote that he performed all the work in connection with the matter, and provided a breakdown of his activities, such as (1) reviewing the City's cross-complaint; (2) researching questions of law, e.g., whether the cross-complaint fell within the public interest exception; (3) preparing the points and authorities; (4) reviewing the City's legal authorities; (5) preparing a reply brief; (6) meeting with Singletary; and (7) attending the hearing on the anti-SLAPP motion.

Coates further declared he spent 9.3 hours working on the motion for attorney's fees, and he estimated another five hours would be expended at the hearing and responding to the City's opposition. In total, Coates declared Singletary should be awarded $7,600 in attorney's fees for the anti-SLAPP motion, and $3,700 for the fee motion, for a grand total fee amount of $11,300. The trial court considered Coates's declaration and the work performed when ruling on the amount of fees to be awarded.

Coates's declaration was made under penalty of perjury. The work described in the declaration was broken down by task and can be, for the most part, verified by looking at the record, e.g., the points and authorities. Also, the reasonable worth of that work can be evaluated by looking at the record. There is nothing that stands out in the declaration as being erroneous, such as a particular activity being listed twice, or a claim Coates worked on a document that was never filed. Thus, Coates's declaration is entitled to credence. (*Horsford, supra,* 132 Cal.App.4th at p. 396.) As a result, the declaration constitutes reliable evidence to establish the fees earned by Coates, and therefore, the trial court did not abuse its discretion in relying on the declaration.

The City asserts that since there were no billing records or invoices, the trial court could not properly analyze Singletary's motion for fees. As set forth *ante,* "Although a fee request ordinarily should be documented in great

detail, it cannot be said . . . that the absence of time records and billing statements deprive[s] [a] trial court of substantial evidence to support an award . . . ." (*Weber v. Langholz, supra,* 39 Cal.App.4th at p. 1587.) In the instant case, there is sufficient evidence upon which the trial court could rely in making its ruling. The lack of detailed billing statements perhaps is relevant to the credibility of Coates's declaration; however, the lack of billing statements does not automatically establish that there was insufficient evidence for the trial court to render a decision.

The City contends that, without detailed billing statements, the trial court abdicated its role and had to *"take their word for it"* that the declaration was accurate. As set forth *ante,* "[T]he verified time statements of [an] attorney[], as [an] officer[] of the court, are entitled to credence in the absence of a clear indication the records are erroneous." (*Horsford, supra,* 132 Cal.App.4th at p. 396.) The City does not point out any errors in the declaration that would lead to a finding the declaration was erroneous. Thus, it was proper for the trial court to rely on Coates's declaration.

Next, the City asserts the trial court's ruling was unreasonable because in Coates's breakdown of activities he included work that concerned the case in general, as opposed to work that was directly related to the anti-SLAPP motion. Coates's declaration includes 10 primary activities, some of which were then broken down further, into more detail. The City points out that one of the listed activities reflects Coates spent time "[a]nalyzing and reviewing the allegations made in the Cross-Complaint for purposes of responding to the cross-complaint," which the City believes was related to the litigation in general.

As set forth *ante,* the declaration and work filed with the trial court are sufficient evidence for the trial court to determine the amount of fees that should be awarded. Indeed, Coates declared he earned a total of $11,300 in attorney's fees working on the fourth and sixth cause of action portions of the anti-SLAPP motion, as well as the fee motion; however, the trial court awarded attorney's fees in the amount of $5,750, which means the trial court cut the requested fees by nearly half. "When the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated. [Citation.]" (*Christian Research, supra,* 165 Cal.App.4th at p. 1323.) Thus, the record demonstrates the trial court was able to discern from the record of filings and the declaration that some of the fees were not appropriate. In other words, the fact the declaration may include inappropriate fees does not mean that the fee award encompasses those inappropriate fees, because the requested fees were cut in half by the trial court. Accordingly, the trial court's decision appears reasonable.

Alternatively, the City argues the attorney fee award should be substantially reduced, as opposed to reversed, because (1) the fourth and sixth causes of action were insignificant; (2) all the factual issues are still subject to litigation; (3) the City can still seek an order compelling Singletary to construct the infrastructure or pay for the construction of the infrastructure; and (4) Coates's claims he spent 30.4 hours on the fourth and sixth causes of actions are not supported by documents he filed on Singletary's behalf, for example Coates dedicated very little space in his motions to the fourth and sixth causes of action.

As set forth *ante*, the trial court reduced the requested attorney fee award by nearly half, from $11,300 to $5,750. The City's arguments explain why the trial court may have been correct in initially reducing the amount of fees awarded, but they do not explain why the award must be further reduced. In other words, we are not persuaded that the trial court acted unreasonably, in light of the fact that the trial court already substantially reduced the fee award.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The judgment is affirmed as it relates to the portion of the cross-complaint pertaining to Singletary's lawsuit. The judgment is reversed as it relates to the portion of the cross-complaint pertaining to Singletary's alleged bribery. As to the fourth cause of action in the cross-complaint, we strike the citations to Code of Civil Procedure section 128.7 and Civil Code section 3517. Also in the fourth cause of action, we strike the following language related to the requested injunction: "(c) cease and desist from seeking to profit by his own admitted bribery of Grimsby." In the sixth cause of action in the cross-complaint, we strike the portion that reads, "(c) cease and desist from seeking to profit by Singletary's bribery of Grimsby." In the general allegations section, we strike the portion of paragraph eight that reads: "Notwithstanding the Contract, and further notwithstanding his felony bribery conviction, on January 10, 2008, Singletary filed a civil lawsuit against Colton which, in substance, seeks to compel Colton to construct the Infrastructure at its own expense. Singletary's complaint and subsequent amended complaints fail to acknowledge the Contract or the bribery conviction." The parties are to bear their own costs on appeal.

King, J., concurred.

**RICHLI, Acting P. J.,** Concurring and Dissenting.—I must respectfully dissent. In my view, the gravamen of the fourth cause of action as well as the sixth cause of action of the cross-complaint was wholly unrelated to any

protected activity. Accordingly, the trial court should have denied the special motion to strike (SLAPP motion) in its entirety.

Even if I agreed with the majority on the merits, I would still dissent from its disposition. Its "slice and dice" approach—striking particular allegations, rather than an entire cause of action—violates Code of Civil Procedure section 425.16 (the SLAPP Act). The SLAPP Act does not authorize us to rewrite the pleadings.

Last, but not least, while I do agree with the majority that the public prosecutor exception (Code Civ. Proc., § 425.16, subd. (d)) did not apply in this case, I do so because the cross-complaint was not brought by the city attorney, rather than because it was not brought in the name of the People. Hence, I decline to become embroiled in the majority's extended disagreement with *City of Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302 [3 Cal.Rptr.3d 473].

I do appreciate the clear statement of facts as well as the well-organized structure of the majority opinion, as these make my job of dissenting that much easier.

A. *Dissent from "PRELIMINARY ISSUES."*

Preliminarily, I disagree somewhat with part A.3. of the majority opinion, entitled "PRELIMINARY ISSUES," which deals with the interpretation of the fourth cause of action.

No law school is ever going to hold up the cross-complaint as a model of good legal drafting. In the words of the court in *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404 [9 Cal.Rptr.3d 242], the cross-complaint "contains a number of . . . allegations that are simply inconsequential fluff. It is these allegations that appear to have invited the instant section 425.16 motion [as] the wolf invited Little Red Riding Hood into grandma's house. Had plaintiff's counsel more carefully drafted the [cross-]complaint, restricting it only to the facts relevant to each cause of action, counsel might have avoided this motion entirely." (*Id.* at p. 410.) Nevertheless, "a pleading . . . must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.)

The fourth cause of action incorporates all of the "General Allegations." (Some capitalization omitted.) It then alleges that "Singletary has engaged and continues to engage in unlawful, unfair and fraudulent business acts and practices, as more fully set forth above, including but not limited to bribing Grimsby and now attempting to profit by that crime . . . in violation of

various state and federal statutes, including without limitation, 18 U.S.C. § 666, California Government Code sections 1090 *et seq.*, California Code of Civil Procedure section 128.7, subdivisions (b) and (f), and California Civil Code sections 3517 and 3521."

In connection with the fourth cause of action, the City of Colton (the City) requests "injunctive relief and restitution orders requiring Singletary to: (a) construct those portions of the Infrastructure which remain to be constructed; (b) reimburse [the City] for the portions of the Infrastructure which [the City] has already constructed; (c) cease and desist from seeking to profit by his own admitted bribery of Grimsby."

The "General Allegations" allege Singletary's bribery, as well as Singletary's filing of the underlying complaint in this action. However, those are not the only ways in which Singletary is allegedly "attempting to profit." The cross-complaint also alleges that Singletary has "conceal[ed] the [1992] Contract from [the City]." It further alleges that he has rejected the City's demand that he perform the 1992 contract and construct the improvements. Finally, it alleges that the City has already spent up to $1 million to construct infrastructure improvements.

Hence, I do not agree that the fourth cause of action somehow combines "two separate causes of action . . . ." (Maj. opn., *ante*, at p. 765.) Rather, the City's theory is that Singletary's illegal act of bribery infects *any* subsequent attempts to profit from the bribery. Significantly, the fourth cause of action does not *expressly* allege that those attempts to profit include his lawsuit against the City. Indeed, the fourth cause of action does not mention the filing of that lawsuit at all. I do agree with the majority that, by citing Code of Civil Procedure section 128.7, the cross-complaint *implicitly* alleges that the attempts to profit include the filing of the complaint. However, this is hardly a "separate cause of action." It is not even "half of the cause of action . . . ." (Maj. opn., *ante*, at pp. 765–766.) As I will discuss further below, it is little more than a makeweight.

## B. *Dissent from "PROTECTED ACTIVITY."*

I also disagree with part A.4. of the majority opinion, entitled, "PROTECTED ACTIVITY." Although the majority correctly states the "gravamen" test, it then goes on to misapply it.

" ' "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.' " [Citation.] Conversely, a defendant in an ordinary private dispute cannot take advantage of

the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. [Citation.] [Thus] it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.' [Citation.]" (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1369 [97 Cal.Rptr.3d 196].)[1]

For example, in *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265 [117 Cal.Rptr.3d 153], Baharian-Mehr asserted causes of action against Smith and Smith's brother for, among other things, breach of fiduciary duty, constructive fraud, and a constructive trust. (*Id.* at p. 270.) He alleged that Smith and his brother had mismanaged corporate funds by, among other things, keeping erroneous accounting records; failing to deposit receipts; continuing to pay the brother after he quit; hiring political consultants for their personal gain; paying Smith's personal attorney; failing to pay employees all wages due, resulting in litigation; hiring a private investigator in connection with former employees' wage and hour litigation; and causing the corporation to sue the brother. (*Id.* at pp. 269–270.) Smith filed a SLAPP motion, which was denied. (*Id.* at p. 270.)

Smith argued that the allegations about hiring attorneys and a private investigator in connection with the wage and hour litigation, as well as the allegation about causing the corporation to sue his brother, related to protected activity. (*Baharian-Mehr v. Smith, supra,* 189 Cal.App.4th at p. 272.) The appellate court nevertheless held that the SLAPP motion was properly denied because the challenged causes of action did not arise out of protected activity. (*Id.* at pp. 273.) Indeed, it held that the SLAPP motion was *frivolous.* (*Id.* at p. 275.)

The court explained: "Baharian–Mehr's allegations relating to the hiring of attorneys and filing a lawsuit . . . do not constitute the 'overall thrust' of the complaint, which relates to mismanagement and misuse of corporate funds. The payment of attorneys and hiring of a private investigator constitute only a few of many examples of such mismanagement. The list of specific alleged misuses of corporate funds, for example, constitutes almost two pages of the complaint. The gravamen of Baharian–Mehr's complaint is not that Smith's

[1] *Salma v. Capon* (2008) 161 Cal.App.4th 1275 [74 Cal.Rptr.3d 873] [First Dist., Div. Five], which rejected the gravamen test (*id.* at pp. 1287–1288 & fn. 5), "has not been followed by any other published decision, and . . . every other case holds to the contrary." (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 474, fn. 8 [137 Cal.Rptr.3d 455].)

petitioning activity caused him harm, but that his wasteful and unnecessary spending on attorneys and investigators did. In this instance, the mention of protected activity is 'only incidental' to a business dispute based on nonprotected activity. [Citation.]" (*Baharian-Mehr v. Smith, supra,* 189 Cal.App.4th at p. 273.)

Here, the fourth cause of action implicates protected activity even less than the complaint in *Baharian-Mehr*. The gravamen of the fourth cause of action is Singletary's illegal bribery. That bribery harmed the City because it caused the City to enter into the development agreement, which in turn enabled Singletary to disavow the 1992 contract and caused the City to spend as much as $1 million on infrastructure improvements. None of this is even arguably protected activity. And, as already noted, the fourth cause of action does not so much as mention the only assertedly protected activity—suing the City.

The majority nevertheless concludes that "Singletary's act of suing the City is a substantial part of the fourth cause of action, because the lawsuit aspect of the cause of action appears to form the sole basis for the request for injunctive relief." (Maj. opn., *ante,* at p. 768.) But not so. The request for injunctive relief specifically includes an order that Singletary "construct those portions of the Infrastructure which remain to be constructed . . . ." The majority discounts this because it would require Singletary to do something, rather than to refrain from doing something. (Maj. opn., *ante,* at p. 771.) "An injunction is statutorily defined to be 'a writ or order requiring a person to refrain from a particular act.' [Citation.] While the statute seems to limit that definition to prohibitory injunctions, an injunction may also be mandatory, i.e., may compel the performance of an affirmative act. [Citations.]" (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1160 [69 Cal.Rptr.2d 692].) Thus, this is a valid request for an injunction.

Even if I were to focus solely on the request for an injunction that Singletary "cease and desist from seeking to profit by his own admitted bribery of Grimsby," there is no reason to assume that this refers to Singletary's lawsuit against the City. It seems to be a "catch-all" plea for any and all injunctive relief to which the City may be entitled against Singletary's attempts, known and unknown, to profit from his bribery. While it can be read as including his lawsuit against the City, it can hardly be read as limited to that.

In sum, the gravamen of the fourth cause of action relates to wholly unprotected activity. The sixth cause of action—for an injunction—simply restates and repeats the requests for an injunction in the third and fourth causes of action. Accordingly, the trial court should have denied the SLAPP motion with respect to both the fourth and the sixth causes of action.

### C. *Dissent from "MIXED RESULT."*

Next, I disagree with part A.6. of the majority opinion, entitled, "MIXED RESULT."

The SLAPP Act authorizes a trial court to strike a "cause of action." (Code Civ. Proc., § 425.16, subd. (b)(1).) It "cannot be used to strike particular allegations within a cause of action. [Citation.]" (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1124 [41 Cal.Rptr.3d 1]; see *Guessous v. Chrome Hearts, LLC* (2009) 179 Cal.App.4th 1177, 1187 [102 Cal.Rptr.3d 214] ["section 425.16 applies only to a cause of action, not to a *remedy*"]; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162 [64 Cal.Rptr.3d 488] [prayer for injunction cannot be stricken under SLAPP Act]; *M. G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 627–628 [107 Cal.Rptr.2d 504] [Fourth Dist., Div. Two] ["the anti-SLAPP statute allows a motion to strike to be made against only a cause of action, not a cause of action as it applies to an individual plaintiff"].) This is implicit in the gravamen test; otherwise, rather than determining the gravamen of a cause of action, a court could simply strike any allegations based on protected activity, while allowing allegations of unprotected activity to stand.

Nevertheless, the majority concludes that it can and should strike isolated allegations, citing *Taus v. Loftus* (2007) 40 Cal.4th 683 [54 Cal.Rptr.3d 775, 151 P.3d 1185]. *Taus*, however, does not support the majority's position.

It is vital to remember the procedural posture of *Taus*. The trial court granted the defendants' SLAPP motion with respect to some causes of action but denied it with respect to others, including causes of action for invasion of privacy and for defamation. (*Taus v. Loftus, supra*, 40 Cal.4th at p. 702.)

The Court of Appeal held that "the activities of defendants that gave rise to plaintiff's action . . . were acts in furtherance of defendants' right of free speech for purposes of the anti-SLAPP statute." (*Taus v. Loftus, supra*, 40 Cal.4th at p. 704, fn. omitted.) It then turned to whether the plaintiff had established a probability of prevailing. (*Ibid.*) The Court of Appeal viewed the invasion of privacy cause of action as "potentially implicat[ing] . . . two distinct tort theories"—public disclosure of private facts and intrusion into private matters. (*Id.* at p. 705.) It ruled that the plaintiff had shown a probability of prevailing:

(1) On her "public disclosure of private facts" theory based on certain alleged disclosures, but not others (*Taus v. Loftus, supra*, 40 Cal.4th at pp. 705–706);

(2) On her "intrusion into private matters" theory based on certain alleged intrusions, but not others (*Taus v. Loftus, supra,* 40 Cal.4th at pp. 707–708); and

(3) On her defamation cause of action based on certain alleged statements, but not others (*Taus v. Loftus, supra,* 40 Cal.4th at pp. 708–711).

It concluded that, while most of the plaintiff's "claims" should have been "dismissed," certain "claims"—meaning certain causes of action, to the extent that they were based on certain factual allegations—"could go forward . . . ." (*Taus v. Loftus, supra,* 40 Cal.4th at p. 711.)

The Supreme Court held that the plaintiff showed a probability of prevailing with respect to only one cause of action (for intrusion into private matters), based on only one alleged intrusion (using intentional misrepresentations to obtain personal information about the plaintiff). (*Taus v. Loftus, supra,* 40 Cal.4th at pp. 727–741.)

Significantly, however, the court did not address the propriety of "dismissing" particular allegations of the complaint. To the contrary, it stated: "[T]he Court of Appeal held that plaintiff failed to establish such a probability of prevailing with regard to the bulk of defendants' condut to which the complaint was directed, and plaintiff did not seek review of the appellate court's decision. Accordingly, the claims found deficient by the Court of Appeal are not before us. *The issues before us are limited to those claims as to which the Court of Appeal found that plaintiff adequately had established a prima facie case to avoid dismissal under section 425.16.*" (*Taus v. Loftus, supra,* 40 Cal.4th at p. 714, italics added.)

Thus, it does not appear that any party was arguing that the Court of Appeal's approach was erroneous. " '[I]t is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659, 694, fn. 14 [121 Cal.Rptr.3d 58, 247 P.3d 130].) Had the Supreme Court really intended to change the well-established rule that the SLAPP Act cannot be used to strike particular allegations, surely it would have said it was doing so and explained why. At a minimum, it would have had to justify taking such a step in the face of the plain language of the SLAPP Act.

I recognize that one case—*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169 [128 Cal.Rptr.3d 205]—has read *Taus* as changing this rule. (*Wallace,* at pp. 1208–1210.) However, I disagree with *Wallace* on this point, for the reasons already stated, as well as for the reasons stated by Justice Jones, concurring and dissenting in *Wallace.* (*Id.* at pp. 1216–1220 (conc. & dis.

opn. of Jones, P. J.) ["*Taus* never analyzed the propriety of striking some, but not all, alleged wrongful acts supporting a cause of action."].)

In any event, *Wallace* concluded that *Taus v. Loftus, supra,* 40 Cal.4th 683 was implicitly overruled on this point in *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811 [124 Cal.Rptr.3d 256, 250 P.3d 1115], which held "that, where a cause of action . . . is based on protected activity, the entire cause of action may proceed as long as the plaintiff shows a probability of prevailing on at least *one* of the asserted bases for liability." (*Wallace v. McCubbin, supra,* 196 Cal.App.4th at p. 1211.) Here, the majority cites both *Taus* and *Wallace.* However, it conspicuously ignores not only *Oasis,* but also the conclusion in *Wallace* that *Oasis* overruled *Taus.*

Finally, both *Taus* and *Wallace* were dealing strictly with the second prong of the SLAPP Act test—whether the plaintiff has shown a probability of prevailing. Even assuming that they support striking part of a cause of action, they do so *only* on the ground that the plaintiff has not shown a probability of prevailing on that part. They do *not* support striking part of a cause of action based on the first prong of the test—on the ground that that part of the plaintiff's cause of action does not arise out of protected activity. As I have already argued, that would be inconsistent with the gravamen test.

### D. *Dissent from "PUBLIC ENFORCEMENT EXCEPTION."*

With regard to part B., entitled, "PUBLIC ENFORCEMENT EXCEPTION," I agree with the conclusion that the exception does not apply, but I disagree with the reasoning.

This exception applies "to any enforcement action brought in the name of the people of the State of California *by the Attorney General, district attorney, or city attorney,* acting as a public prosecutor." (Code Civ. Proc., § 425.16, subd. (d), italics added.) It does not apply here simply because the City's cross-complaint was not brought by the city attorney.

I may take judicial notice that, at all relevant times, the city attorney of Colton was Dean Derleth. While Mr. Derleth is a partner in Best Best & Krieger, which represents the City in this action, his name does not appear on any of the pleadings. The only reasonable reading of the record is that this is an ordinary civil action, brought by the City through other attorneys at Best Best & Krieger, and not brought "by" Mr. Derleth.

I therefore find it unnecessary to discuss whether the exception could apply to a civil action not brought in the name of the People. A fortiori, I find it unnecessary to agree or disagree with *City of Long Beach v. California*

*Citizens for Neighborhood Empowerment, supra*, 111 Cal.App.4th 302. The enforcement action in that case was brought by the city attorney, in his capacity as city attorney. (*Id.* at p. 306.) Thus, it is perfectly consistent with my conclusion.