Filed 2/5/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT C. BARAL, | B253620 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC475350) |
| v. | |
| DAVID SCHNITT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Affirmed.

Ervin Cohen & Jessup, Michael C. Lieb and Leemore L. Kushner for Defendant and Appellant

Sauer & Wagner, Gerald L. Sauer and Amir A. Torkamani for Plaintiff and Respondent

_____

This is an appeal from an order denying a special motion to strike under Code of Civil Procedure, section 425.16.[1]  We are asked to add our voice to the growing debate among appellate districts as to whether section 425.16 (anti-SLAPP statute) authorizes excision of allegations subject to the anti-SLAPP statute (protected activity) in a cause of action that also contains meritorious allegations not within the purview of that statute (mixed cause of action).  The trial court applied appellate and Supreme Court authority holding that the statute does not.  (See, e.g., *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811 (*Oasis*); *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 (*Mann*).)  We agree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**The original and first amended complaints and first two special motions to strike**

Respondent Robert Baral and appellant David Schnitt owned a company, IQ BackOffice LLC (IQ), with others.[2]  Baral's original complaint, filed in December 2011, contained 18 causes of action.  Baral alleged that Schnitt had engaged in fraud and multiple breaches of fiduciary duty, including seizing control and secretly negotiating the sale of IQ to his advantage, while excluding Baral's membership interest and comanagement powers.  The fifth and sixth causes of action (slander and libel) in the original complaint incorporated the latter allegations.  Baral also averred that Schnitt unilaterally retained Moss Adams to conduct an investigation of IQ after Schnitt discovered misappropriation of corporate assets prior to the sale of the business.

Baral contended that Schnitt determined the scope of Moss Adams's examination and knowingly gave Moss Adams false information in order to discredit Baral.  He also alleged that Schnitt directed Moss Adams not to interview Baral in connection with its examination.  As a result of Schnitt's claimed falsehoods, Moss Adams incorrectly concluded in its report that Baral had engaged in certain unauthorized transactions and that there was incomplete support for others.  Schnitt subsequently refused to correct the

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] The other owners are not parties to this appeal.

false information contained in the report, which was ultimately published to both the potential purchaser and the members of IQ.

On May 17, 2012, the trial court determined that the fifth and sixth causes of action should be struck because they were protected under section 425.16. Because these defamation claims were based exclusively on communications made in a prelitigation fraud investigation, the trial court concluded that the absolute litigation privilege under Civil Code section 47, subdivision (b) (litigation privilege) applied to "the statements allegedly made by [Schnitt] while conducting the investigation in anticipation of litigation."

Also on May 17, 2012, the trial court ruled on Schnitt's demurrer to the other causes of action. It sustained the demurrer with leave to amend as to nine of the remaining 16 causes of action, sustained it without leave to amend as to five causes of action, and overruled the demurrer as to two causes of action. Baral filed a notice of appeal from the May 17, 2012 rulings, which he abandoned in January 2013 after he obtained new counsel. (*Baral v. Schnitt* (Jan. 22, 2013, B242569).)

In June 2012, Baral, through his former counsel, filed a first amended complaint. The first amended complaint contained 11 causes of action; none was a defamation claim. Baral averred that Schnitt had frozen Baral out of participation in the Moss Adams audit and that Schnitt had made false representations to auditors in an effort to discredit Baral. On July 23, 2012, Schnitt filed another anti-SLAPP motion to strike 10 of the 11 causes of action from the first amended complaint.[3] According to Schnitt, each incorporated allegations about the Moss Adams audit that had been the subject of his first motion to strike.

**The second amended complaint and third special motion to strike**

On January 24, 2013, Baral, who was then represented by new counsel, filed a second amended complaint. The second amended complaint contained four causes of

---

[3] The trial court did not rule on that anti-SLAPP motion because that motion had been withdrawn by stipulation when Baral abandoned his appeal and the parties further stipulated to Baral's filing the second amended complaint.

action:  breach of fiduciary duty, constructive fraud, negligent misrepresentation, and declaratory relief.[4]  Baral asserted that Schnitt violated his fiduciary duties in usurping Baral's ownership and management interests in IQ so that Schnitt could benefit from what was initially a secret sale of IQ.  As one example of Schnitt's alleged breach of fiduciary duty, Baral asserted that Schnitt prevented him from participating in Moss Adams's investigation in an effort to force Baral's cooperation in the sale of IQ.  That cause of action sought the trial court's assistance in reopening the investigation, in which Baral would participate, and preventing Schnitt from interfering with corrections to the report, if any, taken by Moss Adams.

More specifically, Baral alleged that in 2003 he was a certified public accountant and owned and operated an accounting firm, R.C. Baral & Company, Inc. (R.C. Baral).  In August or September 2003 Schnitt was having a dispute with his partner in CoEfficient Back Office Solutions LLC (CoEfficient) when he approached Baral to invest and become a partner in CoEfficient.  Both R.C. Baral and CoEfficient specialized in "outsourcing" business services to companies that did not internally handle those needs.

Baral, Schnitt, and nonparty Dennis Foster ultimately orally agreed in 2003 to operate IQ as a new outsourcing company.  They agreed to act as comanaging members, with Schnitt holding a 35 percent interest and Baral a 30 percent interest.  Baral alleged that, unbeknownst to him, in September 2003 Schnitt filed with the California Secretary of State documents that identified Schnitt as the sole managing member.  Also without Baral's knowledge, in October 2003 Schnitt executed an operating agreement for IQ that identified Schnitt as the sole manager and member of IQ.

Baral further alleged the parties operated IQ as comanaging partners from 2003 until 2010, when Schnitt began unilateral negotiations for the sale of IQ to LiveIt Investment, Ltd. (LiveIt).  As part of the purchase agreement to sell IQ, Schnitt agreed to sell a 72.6 percent interest in IQ based on his representation that he was the sole member

---

[4] We recite the facts taken from the second amended complaint and the parties' respective declarations only for the purpose of deciding the anti-SLAPP motion.

and manager of IQ. Schnitt negotiated an employment position and ownership interest for himself without Baral's knowledge or consent. Also in connection with the sale, in November 2010 Schnitt retained Moss Adams to audit IQ's financial statements. Moss Adams issued an auditor's report on December 15, 2010, which concluded that the financial statements fairly represented IQ's financial position.

Later, in December 2010 Schnitt discovered that Baral's son, who was a bookkeeper for IQ, had misappropriated funds belonging to IQ. When apprised of this, Baral guaranteed that he would indemnify IQ for any losses caused by his son. Schnitt retained Moss Adams to determine the amount of misappropriated assets. Baral averred that on Schnitt's instructions, Moss Adams did not interview Baral during its investigation or otherwise allow Baral to submit information to the auditors. Schnitt's motivation for excluding Baral from the investigation was to leverage Baral's cooperation with the sale of IQ.

Baral also alleged that the Moss Adams investigative report, which was distributed by Schnitt to Baral and various third parties in February 2011, contained inaccurate conclusions. Schnitt refused to instruct Moss Adams to withdraw the report or reopen the investigation to consider additional information that would be provided by Baral. In March 2011, Baral reimbursed IQ for all funds allegedly misappropriated by his son.

In addition, Baral alleged that in April 2011, Schnitt, Baral, and Foster sold IQ to LiveIt. In connection with the sale, the parties entered into a number of agreements, which reflected that Baral was a member and manager of IQ from its inception in 2003. In May 2011, after the sale of IQ had closed, Baral renewed his efforts to provide information to the Moss Adams auditors, to no avail.

On February 22, 2013, Schnitt filed an anti-SLAPP motion, seeking to strike all references to the Moss Adams audit in the first (breach of fiduciary duty), second (constructive fraud), and fourth (declaratory relief) causes of action and related prayers

5

for relief.[5]  Schnitt asserts that, under *Cho v. Chang* (2013) 219 Cal.App.4th 521 (*Cho*) and *City of Colton v. Singletary* (2012) 206 Cal. App.4th 751 (*City of Colton*), the trial court should have struck these allegations notwithstanding that the first, second, and fourth causes of action contain other allegations that are not within the purview of the anti-SLAPP statute, and notwithstanding that Schnitt chose not to argue that Baral could not make a prima facie showing of prevailing on the merits of those surviving allegations.

The trial court denied the anti-SLAPP motion on December 13, 2013.  Without expressly deciding whether the second amended complaint contained allegations of protected activity, the trial court concluded:  "[The] Anti-SLAPP motion still applies to causes of action or to an entire complaint, not allegations.  Cases cited state that if a cause of action contains portions that are subject to anti-SLAPP and portions that are not, the defendant can move to strike those portions that are subject, i.e. the cause of action would be considered to contain two 'counts'; one count subject and one count not.  No case allows striking allegations per se under [section] 425.16; that is within the province of a regular motion to strike."  Schnitt filed this timely appeal.

After the trial court denied Schnitt's anti-SLAPP motion, Schnitt filed a motion to quash Baral's subpoena to Moss Adams, which was denied on September 23, 2014 (September 23 Order).  In the September 23 Order, the trial court stated that the "[l]ititgation privilege is not a discovery privilege . . . . The audit goes directly to the issues and may lead to the discovery of admissible evidence."

Schnitt also filed a motion to stay the trial court proceedings pending appeal. When the trial court denied that motion and Baral threatened to initiate contempt proceedings if Schnitt did not comply with Baral's discovery requests, Schnitt filed a petition for writ of supersedeas to stay all trial court proceedings pending the instant appeal and to vacate the September 23 Order.

---

[5] Schnitt did not seek to strike any part of the third cause of action for negligent misrepresentation.

In that petition, Schnitt made many of the same arguments he made in his appeal. Baral opposed the petition, also reiterating his arguments in the appeal and expressing dismay over the three-year delay in the case. Baral disputed that the discovery subpoena related only to the Moss Adams fraud audit; he contended the discovery was also relevant to claims that Schnitt conceded would be in the case irrespective of our ruling on the anti-SLAPP motion. We granted a temporary stay, and then granted the writ of supersedeas staying all trial court proceedings pending resolution of the instant appeal.

At oral argument, Baral contended that Schnitt did not have standing to assert the litigation privilege because IQ had retained Moss Adams, and IQ was no longer a party. Schnitt responded that by contesting standing for the first time at oral argument on appeal, Baral had waived the argument, and that because Baral abandoned his appeal from the anti-SLAPP motion as to the defamation claims in the original complaint, this court may not revisit the merits of the litigation privilege as to the anti-SLAPP motion regarding the Moss Adams allegations in the second amended complaint. We asked for and received letter briefs on these issues, as well as the issue of if we were to affirm the trial court, whether Schnitt would be foreclosed from asserting the litigation privilege upon remand.[6]

## DISCUSSION

Schnitt asserts that Baral's causes of action are mixed. Schnitt denies the relevance of whether Baral would have had a probability of prevailing on allegations of breach of fiduciary duty not based on the Moss Adams audit. Instead, he contends that all allegations in the second amended complaint about the Moss Adams audit are governed by the trial court's prior anti-SLAPP ruling regarding the defamation claims in the original complaint.

Schnitt further contends, as he did below, that *Cho*, *supra*, 219 Cal.App.4th 521, and *City of Colton*, *supra*, 206 Cal.App.4th 751, require striking the Moss Adams audit allegations even though such a ruling would not eliminate any cause of action. Any

---

[6] Baral and Schnitt filed their respective letter briefs on January 5, 2015.

7

ruling to the contrary would allow artful pleading as a means to evade the purpose of the anti-SLAPP statute, especially here, where the trial court already had struck Baral's claims regarding the Moss Adams audit from the original complaint.

Baral responds that Schnitt mischaracterizes the second amended complaint when he equates the Moss Adams allegations therein to the defamation claims in the original complaint. The allegations about the Moss Adams audit do not address the content of the auditor's report, but instead describe Schnitt's efforts to preclude Baral from participating in the audit, which is not protected activity, but was a breach of fiduciary duty given that Baral was a member and comanager of IQ.

Finally, Baral contends that the trial court correctly followed *Mann*, *supra*, 120 Cal.App.4th 90, and *Oasis*, *supra*, 51 Cal.4th 811. All causes of action would remain given Schnitt's admitted failure to argue that Baral could not prevail on the merits of breaches of fiduciary duty and fraud not relating to the Moss Adams audit. To hold otherwise would (1) contravene the language of the anti-SLAPP statute, which expressly refers to a cause of action, and its underlying purpose of preventing defendants from incurring litigation costs that would chill First Amendment and redress rights; and (2) force courts to engage in time-consuming evaluations of all allegations in a cause of action without achieving any appreciable reduction in trial time.

## I. The anti-SLAPP statute requires a two-pronged analysis

Section 425.16, subdivision (a) provides: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly."

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection

with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Section 425.16, subdivision (e) states: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

A trial court engages in a two-part analysis in deciding an anti-SLAPP motion. First, the trial court considers whether the defendant has satisfied the initial burden to establish a prima facie case that the plaintiff's claim arises out of activity in furtherance of the right of petition or free speech. (§ 425.16, subd. (b)(1); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314 (*Flatley*); *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).) In making this determination, the trial court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." (§ 425.16, subd. (b)(2).)

Second, if the defendant satisfies this first prong, the burden shifts to the plaintiff to establish a legally sufficient claim and a probability of prevailing on the merits of that claim. (§ 425.16, subd. (b)(1); *Flatley*, *supra*, 39 Cal.4th at p. 314; *Rusheen*, *supra*, 37 Cal.4th at p. 1056.) The plaintiff meets this burden by making a prima facie showing, with admissible evidence, of facts that would sustain a favorable judgment if plaintiff's evidence were credited. (*Oasis*, *supra*, 51 Cal.4th at p. 820.) In considering the second prong of the anti-SLAPP analysis, the trial court cannot weigh evidence. (*Flatley*, *supra*,

9

39 Cal.4th at pp. 323, 326.)  Instead, the trial court must accept as true evidence that is favorable to the plaintiff; it may consider the defendant's evidence only to determine whether the cause of action fails as a matter of law.  (*Id*. at p. 326.)

Appellate courts review de novo an order granting an anti-SLAPP motion.  (*Oasis*, *supra*, 51 Cal.4th at p. 820.)

## II.  Baral's allegations regarding the audit describe protected activity; accordingly, the causes of action are mixed

Baral's claims for slander and libel, respectively, in the fifth and sixth causes of action in the original complaint addressed, in major part, Schnitt's allegedly false statements to the Moss Adams auditors and the resulting "false and defamatory Investigative Report."  Baral sought general, special, and punitive damages.  As noted earlier, Baral further alleged in the fifth cause of action for slander that Schnitt directed Moss Adams not to interview him.  The same allegation appears in the general allegations section, which was also incorporated in the fifth and sixth causes of action.

Schnitt moved to strike the fifth and sixth causes of action in their entirety under the anti-SLAPP statute.  The trial court held that the defamation causes of action were based on communications to the auditor triggered by misappropriation of corporate assets by Baral's son.  For this reason, it concluded that the audit was in anticipation of litigation and protected activity that was absolutely privileged under Civil Code section 47, subdivision (b).

Schnitt argues that because this ruling applies to all allegations in the second amended complaint referring to the Moss Adams audit, "The first prong is not at issue in this appeal."  We are not aware of any authority that would make a trial court's anti-SLAPP ruling as to a different complaint binding on this court.[7]

---

[7] The trial court's ruling would not be law of the case absent a prior appellate ruling (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, §§ 459–460, pp. 515–517), nor would collateral estoppel apply when the trial judge never addressed Baral's general allegations in the original complaint regarding being frozen out of the audit (see 7 Witkin, Cal. Procedure, *supra*, Judgment, § 414, p. 1055).  Res judicata also would not

In accordance with the dictates of the anti-SLAPP statute, we now examine the pleadings and evidence that Schnitt submitted in support of his anti-SLAPP motion. We do so to determine whether Schnitt has satisfied his burden to show that the allegations regarding the Moss Adams audit in the second amended complaint describe protected activity.

The thrust of the breach of fiduciary and constructive fraud causes of action is that Schnitt endeavored to treat Baral as if he did not exist as an owner and comanager of IQ and to usurp the financial benefits of the business for himself. All this, even though Baral alleged that he invested about half of IQ's operating capital and allowed IQ to use his business moniker so that IQ could market its services based on Baral's alleged decades of successful accountancy practice. In further breach of Schnitt's fiduciary duties, Baral alleged that Schnitt held Baral's participation in the Moss Adams audit hostage to Baral's cooperation in the sale of IQ.

In contrast to the defamation claims in his original complaint, Baral does not seek compensatory or punitive damages relating to the Moss Adams audit in any of his causes of action. He seeks just an injunction that would (1) require notifying Moss Adams that it is to accept information from Baral "in connection with any disputed conclusions" in the audit and "to undertake any corrective measures that it deems appropriate under the circumstances (*i.e.,* the issuance of a new written report)"; and (2) restrain Schnitt from objecting to Baral's submission of additional information and any corrective measures undertaken by Moss Adams as long as Baral pays Moss Adams for this additional work.

In his declaratory relief cause of action, Baral incorporates the allegations from the preceding causes of action and seeks, in part, a declaration that Baral was a comanaging member of IQ "at all relevant times." The thrust of the cause of action, however, is a request for a declaration of Baral's right to submit information to contravene the

---

appear to apply to an earlier ruling in the same case (*id.* § 334, p. 939). We do not address any of these doctrines of preclusion because Schnitt failed to assert them.

11

conclusions of the audit report so that Moss Adams may choose to revise that report and a declaration precluding Schnitt from preventing Baral from doing so as a comanager.

In support of the instant anti-SLAPP motion, Schnitt submitted, among other documents, the first and supplemental declarations he previously filed in support of the anti-SLAPP motion addressed to the defamation causes of action in the original complaint. His first declaration contained the conclusion that, after discovering unauthorized checks payable to Baral's son and "anticipating litigation," he hired Moss Adams to do a forensic audit. His supplemental declaration is less opaque. There, he asserted that, because Baral supervised IQ's books and records and prepared its tax returns, Schnitt had to hire a forensic auditor to discern the extent of the misappropriation and whether Baral was involved in it. He anticipated both suing others if the audit revealed that persons other than Baral's son were involved in the theft and being sued by Baral's son if Schnitt fired him, which Schnitt expected to do.

This evidence constitutes a prima facie showing that Schnitt hired Moss Adams to conduct a forensic audit in anticipation of litigation. Substantial case law supports the principle that oral statements and writings made before litigation actually commences can arise from the right to petition the judicial branch. (Burke, Anti-SLAPP Litigation (The Rutter Group 2014) ¶ 3:29, pp. 3-23 to 3-24, and cases cited therein.) The parties do not challenge this principle.

The next question is whether merely seeking to participate in a reopening of the audit for the purpose of convincing Moss Adams to revise a report procured in anticipation of litigation "aris[es] from any act . . . in furtherance of the person's right of petition . . . ." (§ 425.16, subd. (b)(1).) In answering this question, we are required to look to the conduct on which the liability is based and not the motive for the conduct. (*Hunter v. CBS Broadcasting, Inc.* (2011) 221 Cal.App.4th 1510 (*Hunter*).) In addition, "arising from any act . . . in furtherance of a person's right of petition or free speech" within the purview of section 425.16, subdivision (b)(1) also means "*helping* to advance, assisting." (*Lieberman v. KCOP Television, Inc*. (2003) 110 Cal.App.4th 156, 166 [newsgathering through surreptitious recordings incorporated in a broadcast was in

12

furtherance of the news media's right of free speech as to an issue of public interest and, therefore, protected activity]; *Hunter*, *supra*, 221 Cal.App.4th at p. 1520.)

In *Hunter*, the appellate court expressly rejected the argument that the act of hiring a younger female anchor was not in furtherance of the free speech rights of a television station where the male plaintiff alleged age and gender discrimination in that station's hiring decisions. "Thus, even if Hunter is correct that the act of hiring a weather anchor does not qualify as an exercise of free speech rights (an issue we need not decide), he has provided no argument as to why such conduct does not qualify as an act in furtherance of the exercise of such rights. For the reasons explained above, we conclude that it does." (*Hunter*, *supra*, 221 Cal.App.4th at p. 525.) This case is similar. Schnitt proffered evidence in support of his motion that he hired the forensic auditor because he wanted to investigate the extent of embezzlement by Baral's son and whether Baral and others were involved. Schnitt did so in order to consider whether to take legal action against them.

Under the unique facts of this case and the preceding authorities, the decision as to who may participate in the audit would also be "in furtherance of the right to petition." To hold otherwise — where the very subjects of the forensic audit were Baral and his son — would indeed chill exercise of "the right to petition for the redress of grievances" (§ 425.16, subd. (b)(1)) given that the audit was evaluating potential claims against them. For all these reasons, we hold that Schnitt has satisfied his burden under the first prong of the anti-SLAPP analysis.

**III. Baral may contest Schnitt's standing to assert the litigation privilege and Baral's abandonment of his appeal regarding the original complaint has no preclusive effect here**

Lack of standing is a jurisdictional defect that cannot be waived. As the California Supreme Court observed in *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, "Although [the defendant] did not raise these issues before the Court of Appeal, contentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding." (*Id*. at p. 438.)

13

Schnitt contends that because (1) the trial court found that the litigation privilege provided a complete defense to the defamation claims in the original complaint, and (2) Baral abandoned his appeal from that ruling, then (3) this court must conclude that the litigation privilege applies to the Moss Adams allegations in the second amended complaint. More specifically, Schnitt asserts that California's "'one shot' rule" recognized in *In re Baycol Cases I and II* (2011) Cal.4th 751, 761, footnote 8 and in section 906 requires this conclusion.

Schnitt arguably would be correct if Baral were arguing here that the trial court erred in granting the anti-SLAPP motion regarding statements that were the subject of the defamation claims in the original complaint. That, however, is not Baral's argument. There are no defamation claims in the second amended complaint, and Baral is not seeking damages regarding the Moss Adams allegations in that complaint. The Moss Adams allegations in the second amended complaint regard a different wrong—breach of fiduciary duty in being frozen out of the management of IQ.[8] By this observation, we are not ruling that the litigation privilege does not apply to these allegations, but only that this is still an open question. In fact, both sides argue in their letter briefs that were we to affirm the trial court's ruling before us, it would not bind the trial court in considering the litigation privilege upon remand.

We decline the invitation to decide the merits of the litigation privilege as applied to the second amended complaint. As set forth *post* in part IV, even if, arguendo, Schnitt were correct that the litigation privilege applies to the Moss Adams allegations in the second amended complaint, the anti-SLAPP statute does not authorize excising allegations in mixed causes of action where the plaintiff has demonstrated a prima facie

---

[8] At oral argument, Schnitt's counsel conceded that he was not relying on traditional doctrines of preclusion to support his argument that we are precluded from revisiting the litigation privilege as applied to a different complaint. As set forth in footnote 7, *ante*, the trial court's ruling as to the original complaint would not appear to be law of the case, nor would the doctrines of collateral estoppel or res judicata appear to apply.

14

case of prevailing on part of the mixed causes of action. Once again, by so ruling, we express no opinion on what impact, if any, the litigation privilege would have on future pretrial and trial proceedings upon remand.[9]

**IV. The anti-SLAPP statute applies only to an entire cause of action, and Baral demonstrated a prima facie case of prevailing on at least part of each cause of action, thus satisfying the second prong of the anti-SLAPP analysis**

Schnitt does not contest that Baral proffered evidence establishing a prima facie case of breach of fiduciary duty as to the allegations not involving protected activity and not relating to the Moss Adams audit in each cause of action. Instead, he argues that this inquiry is irrelevant because the anti-SLAPP statute can be used to strike nonmeritorious allegations of protected activity within an entire cause of action. Thus, the only remaining issue before us is whether Schnitt is correct.

Division Four of this District observed, "Appellate courts have wrestled with the application of the anti-SLAPP law where . . . a single cause of action includes multiple claims, some protected by that law and some not." (*Cho*, *supra*, 219 Cal.App.4th at p. 526 [cataloging the competing points of view].) We too have struggled with this issue. We come out on the side of those cases holding that, if the nonmoving party demonstrates a prima facie case of prevailing on any part of a mixed cause of action, the anti-SLAPP motion fails. Our conclusion is based on: (1) the express words of the statute; (2) its underlying policies; and (3) the extraordinary consequences of the anti-SLAPP statute that distinguishes it from all other procedural motions.

In *Mann*, *supra*, 120 Cal.App.4th 90, the plaintiff asserted several causes of action, including defamation, trade libel, and interference with business. The plaintiff asserted that the defendants, who were former employees, made false remarks to regulators about plaintiff's handling of carcinogenic chemicals. Plaintiff also alleged that defendants made false remarks to plaintiff's customers to lure them away from plaintiff's business

---

[9] In keeping with this observation, we conclude that the September 23 Order should be vacated.

15

and harassed plaintiff by inundating it with facsimiles, as well as pornographic material and junk mail. The allegations regarding false statements to regulators were incorporated in plaintiff's interference with business claims.

The defendants moved to strike these causes of action. The trial court denied the motion on the ground that the plaintiff had not alleged protected activity. Division One of the Fourth District affirmed as to the defamation cause of action and reversed and remanded as to the trade libel cause of action. On remand, the trial court was to consider the motion under a "new rule of law regarding the prior analysis of the second prong of the anti-SLAPP procedure[.]" (*Mann*, *supra*, 120 Cal.App.4th at p. 113.) It also reversed as to the mixed interference cause of action. "Where a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure." (*Id.* at p. 106.)

The appellate court recognized the policy underlying the anti-SLAPP statute "to encourage participation in matters of public significance by allowing a court to promptly dismiss unmeritorious actions or claims that are brought to chill another's valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (*Mann*, *supra*, 120 Cal.App.4th at p. 102.) It rejected the analogy to a motion to strike under section 436. "Stated differently, the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate. Rather, once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands. Thus, a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit." (*Mann*, *supra,* 120 Cal.App.4th at p. 106.)

In *Oasis*, *supra*, 51 Cal.4th 811, the plaintiff sued the defendant attorney and his law firm for breach of fiduciary duty, professional negligence, and breach of contract.

16

The claims related to the public opposition by the individual defendant to a development project. The defendant engaged in that conduct after he had concluded the representation of the plaintiff developer in seeking approval of that very project. The defendant moved to strike all causes of action. The trial court denied the motion, which ruling was reversed on appeal.

The Supreme Court reversed the appellate court. In its discussion of general principles underlying the anti-SLAPP statute, the Supreme Court quoted the above language in *Mann*. (*Oasis*, *supra*, 51 Cal.4th at p. 820.) It further observed that the "complaint identifies a number of acts of alleged misconduct and theories of recovery, but for purposes of reviewing the ruling on an anti-SLAPP motion, it is sufficient to focus on just one." (*Oasis*, at p. 821.) The Supreme Court did not specify those other acts of misconduct or expressly label the causes of action as "mixed." It appears, however, based on the Supreme Court's recitation of the facts, that the plaintiff's causes of action were mixed; to find otherwise would render as surplus the Supreme Court's reference to the *Mann* holding.

Since *Oasis* was decided, a number of courts has concluded that section 425.16 is not available to strike allegations from an otherwise viable cause of action. (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379 (*Burrill*); *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1211–1212 (*Wallace*).) *Wallace* explained that "*Oasis* clearly holds that, where a cause of action (count) is based on protected activity, the entire cause of action may proceed as long as the plaintiff shows a probability of prevailing on at least *one* of the asserted bases for liability. [¶] . . . Indeed, not only does *Oasis* permit the entirety of the cause of action to go forward, it precludes consideration of the merit of any other claims in the cause of action once a probability of prevailing is demonstrated as to one of them." (*Wallace*, at p. 1211.)

Schnitt relies on two appellate rulings that disagreed with *Mann*—one (*City of Colton*) from the very same district that decided *Mann*, and the other (*Cho*), from Division Four of our own district.

The subject of the anti-SLAPP motion in *City of Colton*, *supra*, 206 Cal.App.4th 751, was the causes of action asserted by the City of Colton (City) in a cross-complaint for unfair business practices under Business and Professions Code section 17200 and for injunctive relief. The City claimed that the cross-defendant had bribed a City councilman to obtain a development contract. The City also asserted in the general allegations portion of its cross-complaint that cross-defendant had sued to compel the City to pay for infrastructure improvements under a prior contract—improvements the City alleged were to be built and paid for by cross-defendant. The City incorporated these allegations in its Business and Professions Code section 17200 cause of action and sought an injunction compelling cross-defendant to construct and pay for the remaining infrastructure and to cease profiting from his own bribery. (*City of Colton*, at pp. 758–759.)

The cross-defendant moved to strike the cross-complaint, including the causes of action for unfair business practices and injunctive relief. The appellate court found that the bribery portion of those causes of action was not protected activity, but that cross-defendant's filing of a lawsuit was protected activity. It also held that the anti-SLAPP statute is available to strike protected allegations even within a single cause of action containing other allegations. In so holding, the appellate court relied principally on the Supreme Court's opinion in *Taus v. Loftus* (2007) 40 Cal.4th 683 (*Taus*). "Given the ruling in *Taus*, we conclude that the portions of the [Business and Professions Code section 17200 and injunctive relief causes of action] that concern [cross-defendant's] lawsuit activity must be stricken from the complaint." (*City of Colton*, *supra*, 206 Cal.App.4th at p. 774.)

In *Taus*, the plaintiff sued, among others, the authors of several articles on recovered memory of child abuse for negligent infliction of emotional distress, invasion of privacy, fraud, and defamation. The defendants filed an anti-SLAPP motion to strike the entire pleading. Relevant to the inquiry in the instant appeal, we focus on the Supreme Court's analysis of the invasion of privacy cause of action. Noting that this cause of action was based on two theories, public disclosure of private facts and intrusion into private matters, it found protected activity as to the former, but not the latter, where

18

the plaintiff alleged that "defendants employed fraudulent means to obtain private information from plaintiff's relatives, including misrepresenting their identity and befriending plaintiff's biological mother." (*Taus*, *supra*, 40 Cal.4th at p. 701.) The *Taus* court then struck all allegations except those relating to obtaining private information by fraudulent means. (*Id.* at p. 742.)

Other courts have criticized *City of Colton*'s conclusion that section 425.16 can be used to parse protected allegations from a cause of action. These courts have referred to the failure of *City of Colton* to consider the Supreme Court's post-*Taus* decision in *Oasis,* or explain why *Oasis* was inapplicable. (See *Burrill*, *supra*, 217 Cal.App.4th at pp. 378–382.) In addition, some authorities have concluded that *City of Colton*'s reliance on *Taus* is questionable because, in citing language from *Mann*, *Oasis* implicitly overruled *Taus*. (See *Burrill*, at pp. 378–382; *Wallace*, *supra*, 196 Cal.App.4th at p. 1211.) We note that *Taus* is not referenced in *Oasis*.

Next comes the ruling of Division Four of our District in *Cho*, *supra*, 219 Cal.App.4th 521. There, the plaintiff sued the defendant for, among other causes of action, sexual harassment. The defendant cross-claimed, alleging defamation and intentional infliction of emotional distress based on statements plaintiff made to the Equal Employment Opportunity Commission and the California Department of Fair Employment and Housing in obtaining her right-to-sue letter and statements to her coworkers. The plaintiff filed an anti-SLAPP motion as to the cross-complaint. The *Cho* court affirmed the trial court's grant of the anti-SLAPP motion as to the allegations about the statements made to the governmental entities and denial of the motion as to the allegations about statements made to coworkers. (*Cho*, at pp. 527–528.)

The *Cho* court acknowledged *Taus* and *Oasis*, but observed that neither "is a mixed cause of action." (*Cho*, *supra*, 219 Cal.App.4th at p 527.) Eschewing a "broad[]" reading of *Oasis*, the appellate court counseled that "the guiding principle in applying the anti-SLAPP statute to a mixed cause of action case is that 'a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one "cause of action."' [Citation.]"

(*Cho*, at p. 527.) Where each cause of action combined allegations of conduct that is protected by section 425.16 with conduct that is not, "the better view in such a case is that the trial court may strike the allegations . . . attacking the protected activity while allowing the unprotected theories to remain." (*Cho*, at p. 523.)

Cho cited the policy of the anti-SLAPP statute and section 436 to conclude that it "would make little sense if the anti-SLAPP law could be defeated by a pleading . . . in which several claims are combined into a single cause of action, some alleging protected activity and some not." (*Cho*, *supra*, 219 Cal.App.4th at p. 527.) "Striking the entire cause of action would plainly be inconsistent with the purposes of the statute. Striking the claims that invoke protected activity but allowing those alleging nonprotected activity to remain would defeat none of them. Doing so also is consonant with the historic effect of a motion to strike: 'to reach certain kinds of defects in a pleading that are not subject to demurrer.' (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1008, p. 420.)" (*Cho*, *supra,* 219 Cal.App.4th at p. 527 [referring to Witkin's discussion of motions to strike under §§ 435 and 436].)

We respectfully disagree with our colleagues. First, the anti-SLAPP statute states that it applies to a "cause of action." The Legislature amended the statute several times (see Historical and Statutory Notes, 14B West's Ann. Code Civ. Proc. (2004 ed.) foll. § 425.16, pp. 384–385), but left intact its application to a "cause of action." If the better rule is to apply the statute to less than a cause of action, enacting that rule is a legislative function, not a judicial one.

Second, section 425.16 was enacted "to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights" of petition or free speech. (*Rusheen*, *supra*, 37 Cal.4th at pp.1055–1056.) "[T]he core purpose . . . is not to pose new impediments to all lawsuits arising from speech and petitioning activity but to remedy a very specific pattern by which contestants in the arena of public affairs were using meritless litigation as a device to silence and punish their adversaries." (*Old Republic Construction Program Group v. Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 876.) This "core" purpose would not be served by granting the motion in this case.

20

It is undisputed that were we to reverse the order denying the instant motion, not a single cause of action would be eliminated from the second amended complaint. Each would be the subject of pretrial and potential trial proceedings in the trial court. There would be no appreciable timesaving if certain portions of the claims were struck. This is not a case in which the plaintiff merely rebranded a prior defamation claim and thereby implicated concerns about artful pleading. Instead, the second amended complaint describes several acts of self-dealing and breaches of fiduciary duty aimed at depriving Baral of the financial benefits of his investments of time and labor in IQ, of which the Moss Adams allegations are but a small part.

The *Cho* court analogized anti-SLAPP motions to "the historic effect" of motions to strike under section 436 to eliminate defects in pleadings not subject to demurrer. (*Cho*, *supra*, 219 Cal.App.4th at p. 527.) We respectfully observe that this analogy does not give proper measure to the extraordinary features of a motion to strike under section 425.16. Unlike any other motion in the procedural toolbox, the filing of an anti-SLAPP motion (1) stays all discovery absent court permission; (2) precludes amendment of the complaint; (3) forces the plaintiff to make an early proffer of proof generally without the benefit of discovery; (4) provides for an award of attorney fees if the moving party prevails; and (5) provides for automatic appeal if the motion is denied and stays all other proceedings in the case. (Burke, Anti-SLAPP Litigation, *supra*, ¶ 1.1, p. 1-2.)

For a defendant to get the benefit of these extraordinary consequences merely by filing a motion aimed at some allegations would encourage a different kind of artfulness, as worrisome as the artful pleading that concerned the *Cho* court. Under the rule advocated in *Cho*, defendants would be encouraged to file an anti-SLAPP motion to excise allegations—no matter how minimal in relation to the remainder of the cause of action—merely to stop discovery and force plaintiff to show plaintiff's evidentiary hand early on, with further delay if the motion is denied and there is an appeal. Trial courts, moreover, would be burdened with more prolix motions with little commensurate savings in trial time.

21

We appreciate that there are competing policies at stake. On the one hand is the policy behind the anti-SLAPP statute aimed at protecting redress and free speech rights against unmeritorious claims. On the other are other procedural rules aimed at giving the parties their day in court and promoting efficient pretrial and trial proceedings. We also appreciate that reasonable minds may differ on how to balance these competing policies in a mixed cause of action. For the reasons set forth above, we conclude that the balance tips in favor of allowing mixed causes of action containing potentially meritorious claims to proceed unencumbered by the special procedures of the anti-SLAPP statute. For all these reasons, we affirm.

## DISPOSITION

The order denying the special motion to strike is affirmed. Baral is awarded his costs on appeal. The writ of supersedeas and the September 23, 2014 order are vacated.

CERTIFIED FOR PUBLICATION.


BENDIX, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.